Victor K. Sapphire (SBN 218634)
Email: vic@brandidentitylawyer.com
LAW OFFICE OF VICTOR SAPPHIRE, INC.
7190 Sunset Blvd., Ste 116
Los Angeles, CA 90046
Telephone: (323) 449-7872

Attorney for Plaintiff
Phillip Madison Jones

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PHILLIP MADISON JONES,

          Plaintiff,

    v.

TWENTIETH CENTURY STUDIOS, INC., et al.,

          Defendants.

Case No. 2:21-cv-05890-FWS-SK

**PLAINTIFF'S EX PARTE APPLICATION FOR AN ORDER STAYING PROCEEDINGS TO ALLOW PLAINTIFF TO ENGAGE NEW COUNSEL IN LIGHT OF THE PASSING AWAY OF PLAINTIFF'S LEAD COUNSEL**

      PLEASE TAKE NOTICE that Plaintiff Phillip Madison Jones ("Plaintiff") hereby moves *ex parte* for an emergency order staying these proceedings for thirty (30) days to facilitate Plaintiff's engaging new counsel to substitute for his recently-deceased lead counsel.

      Plaintiff recently discovered that his lead counsel had passed away in February and his firm had dissolved in the wake of counsel's passing. As a result, although Plaintiff's local counsel remains engaged at this time, he has spent nearly 25 years as a transactional and administrative lawyer and is not litigation counsel, having

originally engaged by the lead counsel firm for the limited purpose of providing a local address for lead counsel, and is not prepared to lead the case forward.

The present ex parte application is brought on the grounds that:

(1) There is insufficient time to hear this matter on noticed motion without causing further delay.

(2) Plaintiff's lead counsel Carl Brundidge passed away in mid-February and his firm, Brundidge and Stanger LLP ("B&S"), dissolved in the wake of his surpring and untimely death.

(3) Plaintiff's local counsel, Victor Sapphire, was retained by B&S because the Court required B&S to have local counsel involved in the case notwithstanding its having at least one California-licensed attorney from the firm who appeared in in the case.  Mr. Sapphire is a transactional and administrative lawyer with limited litigation and no trial experience, and is unequipped to assume the lead counsel role.

(4) Plaintiff and Mr. Sapphire both only learned of Mr. Brundidge's passing and the dissolution of B&S in the mid-April, and have been making efforts to engage substitute counsel.

(5) Plaintiff and Mr. Sapphire only received access to his case files held with B&S earlier this week, as the firm has shut down and is in the process of administrative dissolution.

(6) Because Plaintiff's search for counsel is taking longer than expected and new counsel would be expected to need some time to bring itself up to speed on the case and case files, the extraordinary relief sought herein, namely, the proposed stay of the proceedings without continuing any dates, is warranted.

This application is based on this notice, the attached Memorandum of Points and Authorities, and on the Declarations of Phillip Madison Jones and Victor K. Sapphire, and the [Proposed] Order filed herewith. As set forth in the Declaration of

1

Victor K. Sapphire, filed concurrently herewith, counsel for Plaintiff Jones has duly notified opposing counsel of the instant application and has complied with the requirements of Local Rules 7-19 and 7-19.1 and counsel for Defendants have advised counsel for Plaintiff that they are agreeable to stipulating to a two-week stay and additionally that they will not oppose this *ex parte* application if plaintiff's counsel rejects their offer of a two-week stay, provided that the ex parte application expressly notes their observation that Mr. Brundidge passed away over 11 weeks ago on February 10, 2023 and that, accordingly, in the view of defense counsel, plaintiff has already had a sufficient period in which to retain new counsel.  The names of Defendants' counsel are as follows:

David Aronoff, Esq.                 daronoff@foxrothschild.com

Jeremiah Reynolds, Esq.             jreynolds@eisnerlaw.com

Dated:  May 3, 2023          LAW OFFICE OF VICTOR SAPPHIRE, INC.


                             By:    *s/Victor K. Sapphire*
                             _____
                                    Victor K. Sapphire
                                    Attorney for Plaintiff
                                    PHILLIP MADISON JONES

## MEMORANDUM OF POINTS AND AUTHORITIES

I. **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

Plaintiff sued Defendants Twentieth Century Fox Film Corporation, The Walt Disney Company, 20th Century Studios, Inc., Creative Artists Agency, LLC, RT Features, RT Features U.S. LLC, James Gray, and Ethan Gross, on July 21, 2021 alleging copyright infringement and breach of contract.  Plaintiff claims Defendants infringed his copyright in and stole his ideas from a screenplay that was ultimately released as the feature film entitled, "Ad Astra".  The Fourth Amended Complaint was filed on January 2, 2023.  *See* ECF No. 126 *and Exhibits.*  Discovery has been ongoing, with Plaintiff's counsel B&S last serving responses to discovery requests on November 22, 2022 via email.

After several weeks' calls and emails to Mr. Brundidge with no response, Plaintiff searched for the B&S website online late in the week of April 8 to find the names of other attorneys there with whom he could speak about the status of the case, only to find to his shock and surprise that the firm's website had been taken down.  Madison Decl., ¶2.  He also left several messages for Mr. Brundidge with the firm's answering service.  *Id.*

Over the weekend, he received a telephone call from an attorney at the B&S firm who advised him that Mr. Brundidge had "recently passed away" and that the firm was no longer operating as it was being dissolved.  On the following Monday morning, he called Mr. Sapphire, whom he had never met or spoken with previously, to find out the status of the case.  *Id.*, at ¶3, 4.

Mr. Sapphire was retained by the B&S firm for the purpose of providing a local attorney address for B&S before the court, so that the firm's appearance would be recognized and approved.  *See* ECF 24, 25.  Sapphire Decl., ¶4.  Mr. Sapphire was instructed by B&S to take no action in the case, as B&S was handling it and was sensitive to being charged for duplicative work already being performed by its attorneys.  *Id.*

On their initial call, Mr. Jones told Mr. Sapphire that he had been trying to reach B&S for an update concerning his case and found the firm's website "gone", his phone calls and emails going unanswered, and he had just learned that Mr. Brundidge had passed away.  Jones Decl., ¶4.  Mr. Sapphire was astonished by the news, as he had received a call from Brundidge attorney David Moore at the end of March about potential future cases in California; the subject of Mr. Brundidge's condition or the state of the B&S firm had not come up on the call.  Sapphire Decl., ¶6.  He had also been instructed to respond to Defendants' emails concerning mediation, and to plan to accompany Mr. Jones to the mediation taking place in Los Angeles in mid-July.  *Id*.  Mr. Sapphire told Mr. Jones that his role had been circumscribed by B&S to the initial local counsel appointment and pursuant to Mr. Brundidge's instructions, he had not been keeping up with the case but he would set about finding out what was going on at B&S regarding the case, and would try to obtain a copy of the case files from the firm.  *Id*., ¶¶4, 7.  During the last week of April Mr. Sapphire was finally able to gain access to B&S' case file for the instant case and download the files.  *Id*. at ¶7.

Mr. Jones has been contacting and interviewing firms throughout the country to engage them as substitute counsel in his case since he learned of Mr. Brundidge's passing and B&S' dissolution.  Jones Decl., ¶5.  Although he has remained engaged to cover the transition to new counsel, Mr. Sapphire has been a transactional and administrative lawyer throughout his career, and has limited courtroom and litigation experience, never having prepared or tried a case, much less as lead counsel.  Sapphire Decl., ¶8.  Moreover, he is a sole practitioner without secretarial or paralegal office support.  *Id*.  He is not equipped to take over lead representation of Mr. Jones in this case.  Finally, because Mr. Brundidge's death in February came after several weeks in hospital during and following a December holiday, followed by the subsequent dissolution of B&S that has stymied Plaintiff's discovery efforts

1  which ground to a standstill upon counsel's death, Mr. Jones is effectively without
2  trial counsel to move the case forward.  *Id*. at ¶9.

3      Defendants' counsel is eager to file motions for summary adjudication in the
4  case, notwithstanding that Plaintiff has not completed discovery and there remain
5  several months before the close of discovery.  Allowing these motions to proceed at
6  this time and under these circumstances would be prejudicial to Plaintiff, who only
7  days ago has obtained access to his case files.  For the foregoing reasons, Plaintiff is
8  seeking the extraordinary relief of a brief stay in the case that would allow Plaintiff
9  to engage new counsel and provide sufficient time to bring them current, where the
10 case may then resume according to the current Scheduling Order.

11 **II.  EX PARTE RELIEF IS WARRANTED HERE**

12     To justify ex parte relief, "it must be established that the moving party is
13 without fault in creating the crisis that requires ex parte relief, or that the crisis
14 occurred as a result of excusable neglect." *Mission Power Engineering Co. v.*
15 *Continental Casualty Co.*, 883 F.Supp. 488, 492 (C.D. Cal. 1995).

16     **A.  If Ex Parte Relief is Not Granted, Irreparable Prejudice Is Present**

17     "A sliding scale is used to measure the threat of prejudice." *Mission Power*,
18 *supra*, 883 F.Supp. at p. 492. If the threatened harm is not severe, then a high
19 likelihood of success on the merits must be apparent. Likewise, if there is a threat of
20 drastic harm, the applicant need only show that there are close issues warranting
21 review before the harm is suffered. *Ibid.*

22     Here, there is a threat of *drastic* harm. Plaintiff's lead counsel passed away
23 and his firm is in the process of dissolution – and Plaintiff only just recently learned
24 of these unfortunate facts.   If Jones is not granted a brief stay to find substitute
25 counsel to continue preparing the case and undertaking necessary further discovery,
26 there is a risk the Court may allow to proceed and then grant the Defendants'
27 unseasonable summary judgment motions and bar forever Jones' opportunity to seek
28 justice for the wrongs done to him before he has had a fair opportunity to conduct the

additional discovery necessary to prepare his case.  Plaintiff is not responsible for the untimely passing of his lead attorney, nor for the dissolution of his lead counsel's firm and B&S' delayed notification to him and Mr. Sapphire of Mr. Brundidge's death.

In December 2022, after Mr. Brundidge's late November response to Defendant Creative Artist Agency's discovery requests, he went on holiday where he fell ill, requiring hospitalization.  After returning home to the greater DC area to go under the care of his personal physician, unbeknownst to his colleagues at his firm, he was admitted to hospital, where he apparently spent the next several weeks working remotely and ultimately passed away on February 10, 2023.  Sapphire Decl., ¶9.  After his death, no one from B&S notified Plaintiff or Mr. Sapphire until April, after Mr. Jones discovered the firm had taken down its website.  *Id.*, ¶5; Jones Decl., ¶¶2, 3.  Unbeknownst to Plaintiff, he has effectively had no representation since at least February and neither he nor Mr. Sapphire had access to his case files until the last week of April, 2023.  Sapphire Decl., ¶7.

Therefore, since there is a substantial threat of drastic harm to Jones' rights in the absence of the relief sought herein, irreparable prejudice has been established.

**B.**    **Jones Is Not at Fault with Regard to the Death of His Attorney and the Untimely Manner in Which He Learned Thereof**

"To show that the moving party is without fault, or guilty only of excusable neglect, requires more than a showing that the other party is the sole wrongdoer. It is the creation of the crisis – the necessity for bypassing regular motion procedures – that requires explanation." *Mission Power*, *supra*, 883 F.Supp. at p. 493.

Here, the crisis was not caused by Plaintiff nor any other party; it was an act of God.  Mr. Brundidge's death is highly relevant to Plaintiff's case as he was lead counsel, chief strategist, and he and his firm carried out all of the work conducted on the case.  Sapphire Decl., ¶4.  Likewise, the delay in learning of Mr. Brundidge's death was not Plaintiff's fault, as he did not hear from B&S until April, after weeks

of unanswered calls and emails to Mr. Brundidge.  Jones Decl., ¶2.  When he finally spoke with someone from B&S, he was informed that the firm was dissolving and would not be able to continue the representation.  *Id*. at ¶3.  Immediately, he began searching for replacement counsel, while also asking Mr. Sapphire to remain involved during the transition, as Mr. Jones does not know basic court procedures, including things like the PACER filing system.  *Id.*, ¶5; Sapphire Decl., ¶8.  Mr. Sapphire agreed and immediately undertook to obtain access to B&S' case file for Mr. Jones' case, which was finally granted this past week.  Sapphire Decl., ¶7.

Plaintiff's efforts to obtain new counsel, while diligent, have not immediately borne fruit, and additional time is needed to put competent litigation/trial counsel in place.  A stay has become necessary as Defendants' attorneys have aggressively sought to move ahead with multiple, simultaneous summary judgment motions against Mr. Jones on the present, incomplete record.  Sapphire Decl., ¶10.  Despite having apprised them of the present circumstances, they refused to grant even two weeks' extension of time to meet and confer from a date that Defendants unilaterally proposed and Plaintiff never agreed to in the first place.  *Id.*  Plaintiff's additional discovery – which would undoubtedly have continued had his lead counsel not fallen ill, passed away, and caused the dissolution of his law firm - is apposite to the central issues in this action.  It might have fomented early settlement talks and cut the proceedings short.  For example, additional fact discovery concerning the access prong of the copyright claims might obviate the basis of the proposed summary judgment motions, and instead encourage serious rather than perfunctory settlement discussions.

Jones' recent discovery and present notification to the Court of Mr. Brundidge's passing is eminently reasonable under the circumstances, since neither he nor local counsel were timely informed of the event by B&S, not even in correspondence as late as the end of March, and Mssrs Jones and Sapphire only learned of it pursuant to their own investigation.  Sapphire Decl., ¶5, 9.  Likewise,

1  the news of the dissolution of Mr. Brundidge's firm.  *Id.*  The need to notify the

2  Court of the passing of Mr. Brundidge is acute in light of the fact that engaging

3  substitute/replacement counsel has not provided a smooth and immediate solution to

4  the problem, as was initially hoped, and in light of the fact that Plaintiff's remaining

5  attorney is not equipped to prosecute the case as lead counsel.

6       Thus, Plaintiff's lack of suitable representation while under the imminent

7  threat from Defendants of multiple unseasonable but potentially dispositive motions

8  on the current, undeveloped record has fomented a crisis necessitating the bypassing

9  of regular motion procedures and the grant of the relief sought herein.

10  **III.**   **CONCLUSION**

11       In conclusion, the instant *ex parte* application should be granted and the Court

12  should order a stay of the proceedings for thirty (30) days (or such other duration the

13  Court finds appropriate), to facilitate Plaintiff's engagement of new counsel and

14  sufficient time to bring them current, after which the case may resume according to

15  the current Scheduling Order which will otherwise remain unchanged.

16

17  Dated:  May 3, 2023        LAW OFFICE OF VICTOR SAPPHIRE, INC.

18

19

20                         By:   *s/Victor K. Sapphire*

21                             Victor K. Sapphire
                           Attorneys for Plaintiff
                           PHILLIP MADISON JONES

22

23

24

25

26

27

28