JEREMIAH REYNOLDS (SBN 223554)
jreynolds@eisnerlaw.com
ZACHARY ELSEA (SBN 279252)
zelsea@eisnerlaw.com
ALEXANDRA ACHAMALLAH (SBN 317978)
aachamallah@eisnerlaw.com
EISNER, LLP
9601 Wilshire Blvd., 7th Floor
Beverly Hills, California 90210
Telephone:  (310) 855-3200
Facsimile:  (310) 855-3201

Attorneys for Defendant,
Creative Artists Agency, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| PHILLIP MADISON JONES, | Case No. 2:21-cv-05890-FWS-SK |
| Plaintiff, | *The Hon. Fred W. Slaughter* |
| vs. | **1. NOTICE OF MOTION AND MOTION OF CREATIVE ARTISTS AGENCY, LLC FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES** |
| TWENTIETH CENTURY FOX FILM CORPORATION d/b/a 20th CENTURY STUDIOS; THE WALT DISNEY COMPANY; 20th CENTURY STUDIOS, INC.; CREATIVE ARTISTS AGENCY, LLC; RT FEATURES; RT FEATURES U.S. LLC; JAMES GRAY and ETHAN GROSS, | |
| Defendants. | **2. NOTICE OF JOINDER IN MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, OF DEFENDANTS THE WALT DISNEY COMPANY, TWENTIETH CENTURY FOX FILM CORPORATION, AND 20TH CENTURY STUDIOS, INC. ON COUNT 4 OF FOURTH AMENDED COMPLAINT** |
| | **3. NOTICE OF JOINDER IN MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, OF DEFENDANTS JAMES GRAY, ETHAN GROSS AND RT FEATURES U.S., LLC ON COUNTS ONE THROUGH THREE OF** |

2811537.8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FOURTH AMENDED COMPLAINT**

*Filed Concurrently with Statement of Uncontroverted Facts and Conclusions of Law; Declarations of Roeg Sutherland, Todd Feldman, John Garvey, Wendy Packard, Jeremiah Reynolds, and Zachary Elsea; [Proposed] Judgment*

Judge:   Hon. Fred Slaughter
Date:    July 13, 2023
Time:    10:00 a.m.
Crtrm.:  10D

Trial Date:            February 13, 2024

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

I.      INTRODUCTION .................................................................................................. 1

II.     STATEMENT OF FACTS ..................................................................................... 4

     A.   CAA Received The Completed Draft Of *Ad Astra* Before Plaintiff Ever Sent CAA *Cosmic Force* ..................................................... 4

     B.   None Of The Individuals At CAA Who Represented The Co-Writer/Director Of *Ad Astra* Had Access To *Cosmic Force* ................. 5

     C.   CAA's Role In *Ad Astra* Was Limited to Representing Talent ............. 6

III.    LEGAL STANDARD ............................................................................................ 7

IV.     ARGUMENT ......................................................................................................... 8

     A.   Jones Admitted He Cannot Prove His Claims Against CAA By Failing to Timely Respond to Requests for Admission ......................... 8

     B.   Jones' Copyright Claims Fail ................................................................ 10

           1.   Jones Fails To Establish That Anyone Involved In The Creation Of *Ad Astra* Had Access To *Cosmic Force*. ................. 10

           2.   Jones Fails To Establish That CAA Had Any Involvement In *Ad Astra* Other Than Representing Its Co-Writer/Director And A Few Actors. ........................................... 14

              (a)   CAA did not directly infringe *Cosmic Force* ................... 14

              (b)   CAA did not contribute to any infringement of *Cosmic Force*. .................................................................. 15

              (c)   CAA did not vicariously infringe *Cosmic Force*. ............ 16

     C.   Jones's Breach Of Contract Claim Fails ............................................... 17

           1.   Jones Has No Evidence Of Access To *Cosmic Force* By Anyone Involved In *Ad Astra*. ...................................................... 17

           2.   Jones Does Not And Cannot Allege That CAA Offered To Compensate Him Directly. ......................................................... 19

V.      CONCLUSION .................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A&M Recs., Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ........................................................................... 16

*Benay v. Warner Bros. Ent.*,
   607 F.3d 620 (9th Cir. 2010), *overruled, in part, on other grounds*
   by *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952
   F.3d 1051 (9th Cir. 2020) (*en banc*) ............................................................ 17, 19

*Bernal v. Paradigm Talent & Literary Agency*,
   788 F. Supp. 2d 1043 (C.D. Cal. 2010) ....................................................*passim*

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................................... 7

*Cobbler Nevada, LLC v. Gonzales*,
   901 F.3d 1142 (9th Cir. 2018) ......................................................................... 15

*Ellison v. Robertson*,
   357 F.3d 1072 (9th Cir. 2004) ..................................................................... 3, 16

*Fodor v. Time Warner, Inc.*,
   19 F.3d 27 (9th Cir. 1994) ............................................................................... 10

*Gable v. Nat'l Broad. Co.*,
   727 F. Supp. 2d 815 (C.D. Cal. 2010) ......................................................12, 13

*Gray v. Hudson*,
   28 F.4th 87 (9th Cir. 2022) .............................................................................. 10

*In re Heritage Bond Litig.*,
   220 F.R.D. 624 (C.D. Cal. 2004) ...................................................................... 8

*Hollywood Screentest of Am., Inc. v. NBC Universal, Inc.*,
   151 Cal. App. 4th 631 (2007) .......................................................................... 18

*Jones v. Blige*,
   558 F.3d 485 (6th Cir. 2009) ........................................................................... 13

EISNER, LLP

*Jorgensen v. Epic/Sony Records*,
  351 F.3d 46 (2d Cir. 2003) .................................................................... 13

*Layton v. Int'l Ass'n of Machinists & Aerospace Workers*,
  285 F. App'x 340 (9th Cir. 2008)........................................................... 8

*Meta-Film Assocs., Inc. v. MCA, Inc.*,
  586 F. Supp. 1346 (C.D. Cal. 1984) .................................................... 13

*Montz v. Pilgrim Films & Television, Inc.*,
  649 F.3d 975 (9th Cir. 2011) ................................................................ 17

*Online Policy Group v. Diebold, Inc.*,
  337 F. Supp. 2d 1195 (N.D. Cal. 2004)............................................... 15

*Perfect 10, Inc. v. Giganews, Inc.*,
  847 F.3d 657 (9th Cir. 2017) ........................................................... 3, 15

*Seymour v. McLane Co.*,
  519 F. App'x 489 (9th Cir. 2013)........................................................... 8

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
  952 F.3d 1051 (9th Cir. 2020) ........................................... 2, 10, 14, 17

*Sonnenfeld v. United Talent Agency, Inc.*,
  No. CV-1203560-SJO-SHX, 2012 WL 12884459 (C.D. Cal. Aug.
  22, 2012) ................................................................................................. 6

*Sony Pictures Ent., Inc. v. Fireworks Ent. Group, Inc.*,
  156 F. Supp. 2d 1148 (C.D. Cal. 2001) ................................................. 7

*Spinner v. Am. Broad. Companies, Inc.*,
  215 Cal.App.4th 172 (2013) ........................................................... 17, 18

*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000), *overruled on other grounds* .............. 10

**Statutes**

17 U.S.C. § 106............................................................................................. 14

Cal. Labor Code § 1400.4 .............................................................................. 6

EISNER, LLP

**Other Authorities**

Fed. R. Civ. P. 36(a) ................................................................. 8

Fed. R. Civ. P. 36(a)(3) ..................................................... 4, 8, 9

Fed. R. Civ. P. 56 ............................................................... 1, 7

Fed. R. Civ. P. 56(c) ................................................................ 7

Local Rule 7-3 ......................................................................... 2

Local Rule 11-6.1 ................................................................... 20

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 13, 2023, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Fred Slaughter, located in the United States Courthouse, 411 West Fourth Street, Santa Ana, CA 92701-4516, Creative Artists Agency, LLC ("CAA") will and hereby does move this Court for Summary Judgment, or, in the alternative, Summary Adjudication.

This Motion is made upon the following grounds: Plaintiff Phillip Madison Jones ("Jones") has failed to produce evidence to create a dispute of material fact supporting his claims of copyright infringement and breach of contract against CAA. The undisputed facts instead show that Jones cannot establish his claims against CAA at trial. CAA is therefore entitled to summary judgment in its favor on all claims pursuant to Federal Rule of Civil Procedure 56.

**PLEASE TAKE FURTHER NOTICE** that on the same date, time, and place specified above, CAA will and does hereby join in the Motion for Summary Judgment under Federal Rule of Civil Procedure 56 of defendants The Walt Disney Company, Twentieth Century Fox Film Corporation, and 20th Century Studios, Inc. (collectively, the "Distributor Defendants") on Count Four of Jones's Fourth Amended Complaint on the grounds that these claims as alleged against CAA are also unsupported by substantial evidence for the same reasons set forth in the Distributor Defendants' motion.

**PLEASE TAKE FURTHER NOTICE** that on the same date, time, and place specified above, CAA will and does hereby join in the Motion for Summary Judgment under Federal Rule of Civil Procedure 56 of defendants James Gray, Ethan Gross, and RT Features U.S., LLC (collectively, the "Writer Defendants") on the First through Third Counts of Jones's Fourth Amended Complaint on the grounds that these claims as alleged against CAA are also unsupported by substantial evidence for the same reasons set forth in the Writer Defendants' motion.

CAA'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; NOTICE OF JOINDER; MEMORANDUM OF POINTS AND AUTHORITIES

1    This Motion and Joinder is based on this Notice, the attached Memorandum
2  of Points and Authorities, Statement of Uncontroverted Facts and Conclusions of
3  Law, the Declarations of Roeg Sutherland, Todd Feldman, John Garvey, Wendy
4  Packard, Jeremiah Reynolds, and Zachary Elsea, filed concurrently herewith, all of
5  the pleadings, files, and records in this proceeding, all other matters of which the
6  Court may take judicial notice, and any argument or evidence that may be presented
7  to or considered by the Court prior to its ruling.

8    CAA complied with Local Rule 7-3 prior to filing this Motion.  Counsel for
9  CAA, as well as counsel for the Distributor Defendants and the Writer Defendants,
10  contacted Jones's counsel of record numerous times requesting to schedule a meet
11  and confer to discuss their motions for summary judgment. (Declaration of Jeremiah
12  Reynolds ¶¶ 3-5.) However, Jones's counsel refused to meet and confer despite
13  Defendants' counsel's many requests to do so. (*Id.*)

14

15  DATED:  May 31, 2023                    EISNER, LLP

16

17

18                          By: _____

19                              JEREMIAH REYNOLDS
                                Attorneys for Defendant,
20                              Creative Artists Agency, LLC

21

22

23

24

25

26

27

28

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.   <u>INTRODUCTION</u>

This case presents a fact pattern that is familiar in the case law, particularly of this district. The scenario is as follows: a creative professional in the entertainment industry submits a work to a large organization such as a studio or talent agency. The project never materializes. Sometime later, the individual sees a publicly released work that they believe is similar to theirs, and they learn that the work has some connection—however attenuated—to the entity to which they pitched their idea. The individual then jumps to the conclusion that their work was copied, and sues everyone involved regardless of whether they have any evidence whatsoever to support their claims.

In the multiple published opinions decided under this fact pattern, as in this case, discovery fails to produce any evidence that supports the plaintiff's conjecture. Discovery reveals that the produced work was in fact developed independently and before the talent agency's receipt of the plaintiff's work. Discovery also reveals that, critically, the individuals at the defendant entity who received the allegedly infringed work had no involvement in or connection to the allegedly infringing work, and never shared the plaintiff's work with anyone who did. That was the situation presented in *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043 (C.D. Cal. 2010) (granting summary judgment in favor of talent agency), as well as a number of other cases, and it is the posture in which this case is presented on summary judgment.[1]

What those cases also have in common is that the defendants all prevailed on summary judgment. To support a claim of copyright infringement "in the absence of direct evidence of copying," a plaintiff must "show[] that the defendant had access

---

[1] In *Bernal*, Paradigm Talent Agency "packaged" the allegedly infringing work, while it is undisputed here that CAA did not "package" *Ad Astra*. (SUF ¶ 19.)

to the plaintiff's work *and* that the two works share similarities probative of copying." *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). "In order to support a claim of access"—and avoid summary judgment—"a plaintiff must offer 'significant, affirmative and probative evidence'" of access. *Bernal*, 788 F. Supp. 2d at 1054. In the context of a plaintiff's submission of an allegedly infringed work to a talent agency or other similar entity, "to avoid summary judgment, a plaintiff must show that he submitted his work to . . . a person who (1) has supervisory responsibility for the allegedly infringing project, (2) contributed ideas and materials to it, or (3) worked in the same unit as the creators." *Id.* at 1056.

Plaintiff Phillip Madison Jones's ("Jones") copyright claims against Creative Artists Agency, LLC ("CAA") fail because Jones can produce no evidence that the individuals at CAA—two agents and one of their assistants—who received the submission of Jones's script, *Cosmic Force*, had any involvement with *Ad Astra*, the allegedly infringing work, or shared *Cosmic Force* with anyone who did. Moreover, the undisputed evidence shows that the three CAA agents who did interact with *Ad Astra*'s director and co-writer (1) never had access to *Cosmic Force*, (2) never read or discussed *Cosmic Force* with any of the three different individuals at CAA who did have access to it, and (3) had never heard of *Cosmic Force* before Jones brought his claims against CAA.[2] Under *Bernal* and other apposite case law, Jones's claims

---

[2] This is entirely unsurprising because *Ad Astra* and *Cosmic Force* are not substantially similar, as Defendants The Walt Disney Company, Twentieth Century Fox Film Corporation, and 20th Century Studios, Inc. (collectively, "the Distributor Defendants") conclusively demonstrate in their motion for summary judgment. Additionally, the motion for summary judgment filed by RT Features U.S., LLC, James Gray, and Ethan Gross (collectively, the "Writer Defendants") thoroughly addresses the independent creation of *Ad Astra* and demonstrates that by the time CAA first received a copy of *Cosmic Force* on November 10, 2015, the bulk of key creative work on *Ad Astra* had already been accomplished and embodied in drafts of the screenplay. Accordingly, rather than reiterate those

must fail on summary judgment.

Jones's claims also fail for a second, independent reason. Jones's claims against CAA are predicated entirely on Jones's baseless allegations, made only on information and belief, that CAA "packaged" *Ad Astra*, that CAA had the right and ability to supervise and control *Ad Astra*'s production, and that CAA financed, produced, and conducted sales of *Ad Astra*. (Fourth Amended Complaint ("FAC") ¶¶ 13-14.) These factual allegations—which would be required to support a claim of direct, contributory, or vicarious copyright infringement—are entirely false, and Jones can adduce no evidence to support them. Instead, the evidence shows that CAA's involvement in *Ad Astra* was limited to representing one of its co-writers and a few actors involved in the project. (SUF ¶¶ 18-23.)

Accordingly, Jones's claim against CAA for direct infringement fails because CAA did not engage in any volitional conduct that infringed on any right owned by Jones. *See Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017). Jones's claim for contributory infringement fails because Jones can show no knowledge of infringement on CAA's part nor any volitional conduct by CAA that materially contributed to any infringement by any other Defendants. *Id.* at 670. And Jones's claim for vicarious infringement fails because the undisputed facts show that CAA had no right to supervise or control the creation or substance of *Ad Astra*. *See Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (plaintiff must show that defendant "has the right and ability to supervise" the infringing activity). Simply put, CAA's representation of individuals involved in the creation of *Ad Astra* cannot alone support any variety of copyright infringement claim.

Jones's implied contract claim fails for substantially the same reasons: CAA

---

arguments here, CAA formally joins in the motions for summary judgment of the Distributor Defendants and the Writer Defendants, and focuses this brief on separate legal issues that are all independently fatal to Jones's claims.

CAA'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; NOTICE OF JOINDER; MEMORANDUM OF POINTS AND AUTHORITIES

1  cannot have breached any implied contract to compensate Jones for use of his ideas
2  when the undisputed facts show that CAA did not use those ideas. And to the extent
3  that Jones alleges CAA breached some confidentiality obligation and shared *Cosmic*
4  *Force* with another defendant, the undisputed facts demonstrate the opposite:
5  *Cosmic Force* was shelved and never circulated within or outside of CAA beyond
6  its original recipients.

7      Finally, notwithstanding the above substantive arguments, Jones has forfeited
8  his case by failing to timely respond to basic, foundational requests for admission,
9  as described below. *See* Fed. R. Civ. P. 36(a)(3). Jones initiated this case, and it is
10  his responsibility to comply with the Federal Rules of Civil Procedure or otherwise
11  suffer their stated consequences. The Court therefore can and should grant summary
12  judgment in CAA's favor on this basis alone.

13      To summarize, Jones has had nearly two years to conduct discovery against
14  CAA and he has no evidence to support his baseless allegations against CAA. Jones
15  should have voluntarily dismissed CAA from the case long ago, but he has
16  stubbornly refused to do so. CAA therefore respectfully requests that the Court enter
17  summary judgment in CAA's favor and dismiss CAA from this action.[3]

18  **II.    STATEMENT OF FACTS**

19      **A.    CAA Received The Completed Draft Of *Ad Astra* Before Plaintiff**
20          **Ever Sent CAA *Cosmic Force***

21      CAA is a talent agency representing actors, directors, writers, producers,
22  musical artists, and others in film, television, music, sports, digital media, and other
23  industries. (SUF ¶ 1.)

24
25
_____

26  [3] While CAA believes there is ample basis to support summary judgment of all
    claims in CAA's favor, CAA requests, in the alternative, summary adjudication in
27  CAA's favor should the Court find that disputed issues of material fact remain as
    to some, but not all, of Jones's causes of action.
28

In November 2013, Defendants James Gray and Ethan Gross transmitted a copy of the *Ad Astra* screenplay to CAA agent Roeg Sutherland. (SUF ¶ 3.) Gray and Gross transmitted another iteration of *Ad Astra* to Sutherland and fellow CAA agents Todd Feldman and John Garvey on May 22, 2015, at which point it was uploaded to CAA's repository, the Literary Library System. (SUF ¶ 4.)

Jones asserts that he completed the *Cosmic Force* screenplay in the fourth quarter of 2014. (FAC ¶¶ 22, 49.) However, Jones concedes that the first time anyone discussed *Cosmic Force* with anyone at CAA was on November 10, 2015— approximately two years after CAA received the November 2013 draft of *Ad Astra* and almost six months after CAA received the May 22, 2015 draft of *Ad Astra*— during a meeting at the offices of de Passe Jones Entertainment that was allegedly attended by former CAA agent Cameron Mitchell. (SUF ¶ 5.) Jones emailed a copy of *Cosmic Force* to former CAA agent Cameron Mitchell on November 10, 2015, supposedly following that meeting. (SUF ¶ 6.) As the Writer Defendants conclusively demonstrate in their motion for summary judgment, by November 10, 2015, much of the key creative work on *Ad Astra* had already been accomplished and was already embodied in the November 29, 2013 screenplay, the August 27, 2014 outline, and the May 22, 2015 script written by Gray and Gross.

Almost a year later, on September 23, 2016, Suzanne de Passe transmitted a copy of the *Cosmic Force* screenplay to CAA agent Brandon Lawrence. (SUF ¶ 7.)

**B.** **None Of The Individuals At CAA Who Represented The Co-Writer/Director Of *Ad Astra* Had Access To *Cosmic Force***

As of 2016, CAA employed over 2,100 individuals, including 200 talent agents and executives working in film and television. (SUF ¶ 2.) Nothing in the record shows that Cameron Mitchell, Cameron Mitchell's assistant, or Brandon Lawrence discussed *Cosmic Force* with anyone else at CAA. To the contrary, the *Cosmic Force* screenplay was never uploaded to CAA's Literary Library System repository. (SUF ¶ 8.) Neither Mitchell, his assistant, or Lawrence emailed *Cosmic*

5

1  *Force* to anyone else at CAA. (SUF ¶ 9.) And there is no evidence that Mitchell or

2  Lawrence (or anyone else at CAA) discussed or shared *Cosmic Force* with any other

3  defendant in this case. (SUF ¶¶ 9, 12.)

4        Critically, neither of the CAA agents (Mitchell and Lawrence) to whom Jones

5  and/or de Passe sent copies of *Cosmic Force* had any involvement in *Ad Astra*

6  whatsoever, nor does Jones allege they did. (SUF ¶ 10.)  Mitchell and Lawrence did

7  not help represent any individual involved in *Ad Astra*, nor does Jones allege that

8  they did. (SUF ¶ 11.)

9        None of the individuals on the CAA team that represents *Ad Astra*'s co-writer

10  and director James Gray—Roeg Sutherland, Todd Feldman, and John Garvey—ever

11  read *Cosmic Force* or discussed it with Mitchell, Lawrence, or anyone else at CAA.

12  (SUF ¶¶ 12, 14, 16.) Sutherland, Feldman, and Garvey were all unaware of the

13  existence of the *Cosmic Force* screenplay prior to the initiation of this action by

14  Jones. (SUF ¶¶ 13, 15, 17.)

15       **C.**    **CAA's Role In *Ad Astra* Was Limited to Representing Talent**

16        CAA is a talent agency. (SUF ¶ 1.) A core function of the talent agents who

17  staff talent agencies like CAA is to help secure and negotiate the terms of

18  employment on behalf of their artist clients, *e.g.*, writers, actors, directors, etc. *See*

19  Cal. Labor Code § 1400.4 (defining talent agencies and artists). In consideration for

20  their services, talent agencies generally commission a percentage of the income their

21  clients earn from each engagement the talent agency helped to procure and/or

22  negotiate. *See, e.g.*, *Sonnenfeld v. United Talent Agency, Inc.*, No. CV-1203560-

23  SJO-SHX, 2012 WL 12884459, at *2 (C.D. Cal. Aug. 22, 2012) (confirming

24  arbitration award entitling talent agency to a 10% commission on filmmaker's

25  income derived from a project procured by the talent agency).

26        The only compensation CAA received in connection with *Ad Astra* was

27  CAA's traditional contractual commissions on the income its clients earned from

28  their work on that film; *i.e.*, a percentage of James Gray's earnings from *Ad Astra*,

as well as the earnings of a few actors who appeared in the film. (SUF ¶ 18.) CAA did not "package" *Ad Astra* as Jones alleges. (SUF ¶ 19.) CAA did not act as a sales agent for *Ad Astra*. (SUF ¶ 20.) Nor did CAA distribute *Ad Astra*. (SUF ¶ 21.)

As such, CAA had no right, contractually or as a practical matter, to supervise or control the writing, production, or distribution of *Ad Astra*. Accordingly, no CAA employees in fact supervised or controlled the production or distribution of the *Ad Astra* film. (SUF ¶ 22.) Nor did any CAA employees produce or promote the *Ad Astra* trailers. (SUF ¶ 23.)

In summary, CAA's role with respect to *Ad Astra* was limited to representing talent who worked on the film in exchange for a commission on the income that those clients earned from it.

## III.   <u>LEGAL STANDARD</u>

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. "Once the moving party satisfies this initial burden, 'an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings. . . . The adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial. . . . The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which a reasonable jury could reasonably find for the plaintiff." *Sony Pictures Ent., Inc. v. Fireworks Ent. Group, Inc.*, 156 F. Supp. 2d 1148, 1152 (C.D. Cal. 2001) ("Rule 56 requires entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

IV.   **ARGUMENT**

A.   **Jones Admitted He Cannot Prove His Claims Against CAA By Failing to Timely Respond to Requests for Admission**

Jones initiated this baseless litigation, and not only has he come up entirely empty-handed with any evidence that would support CAA's continued participation as a defendant in the case, he has also shirked his own discovery obligations in violation of the Federal Rules of Civil Procedure. The consequences of Jones's lack of diligence are very clear under the Rules and, as explained below, they support the dismissal of Jones's claims.

"A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). Thus, a late served response to requests for admissions results in the requests being "admitted without the need for any further action by the court or the parties." *Layton v. Int'l Ass'n of Machinists & Aerospace Workers*, 285 F. App'x 340, 341 (9th Cir. 2008) ("The district court did not err when it deemed facts admitted because of [plaintiff]'s failure to timely respond to requests for admission.") (citing *F.T.C. v. Medicor LLC*, 217 F. Supp. 2d 1048, 1053 (C.D. Cal. 2002) ("No motion to establish the admissions is needed because Federal Rule of Civil Procedure 36(a) is self-executing.")).

A district court may properly rely on facts deemed admitted under Rule 36(a) as a basis for summary judgment. *Id.*; *Seymour v. McLane Co.*, 519 F. App'x 489 (9th Cir. 2013) ("[U]nanswered requests for admission, *or untimely* and deficient responses to the same, may be relied on as the basis for granting summary judgment."); *In re Heritage Bond Litig.*, 220 F.R.D. 624, 626 (C.D. Cal. 2004) ("[D]efendant responded 12 days late to class plaintiffs' first set of requests for admissions. For this reason alone, all ten requests for admissions in the first set of requests for admissions should be deemed admitted.").

CAA served its first set of Requests for Admissions ("RFAs") on Jones on January 24, 2022. (SUF ¶ 25.) Jones's responses to the RFAs were due by February 23, 2022, but Plaintiff did not respond until March 7, 2022. (SUF ¶ 26.) Jones never sought an extension on his deadline to respond to the RFAs. (SUF ¶ 27.) Jones also did not file any motion seeking relief from having the RFAs deemed admitted as a result of his late response. (SUF ¶ 28.) CAA pointed out in a meet and confer letter to Jones dated March 13, 2022 that all of Jones's discovery responses, including the RFA responses, were served late. (SUF ¶ 29.) Still Jones did not seek any relief. (SUF ¶ 30.)

As a result, Jones has *admitted* CAA's request for admission that CAA did not infringe or otherwise impermissibly copy *Cosmic Force*. (SUF ¶ 31.) Jones has further admitted that CAA never had a supervisory relationship with any other defendant in this action. (SUF ¶ 32.) Jones also admitted that *Cosmic Force* is not substantially similar to any *Ad Astra* screenplay, film, or trailer. (SUF ¶ 33.) These admissions are fully dispositive of Jones's claims for copyright infringement, vicarious infringement and contributory infringement. Fed. R. Civ. P. 36(a)(3).

Jones has further admitted that he never discussed compensation with CAA for the use of *Cosmic Force*. (SUF ¶ 34.) He has also admitted there was no discussion of confidentiality at his alleged meeting with CAA. (SUF ¶ 35.) These admissions mean that Jones cannot prove essential elements of his breach of implied contract claim.

Summary judgment should be granted for CAA due to Jones's admissions that essential elements of each cause of action he alleged against CAA have not been met. However, even if the Court continues its analysis, it will find, as detailed below, that it should also dismiss the claims against CAA because there is no evidence in the record to support them.

B.     **Jones' Copyright Claims Fail**

    1.     **Jones Fails To Establish That Anyone Involved In The Creation Of *Ad Astra* Had Access To *Cosmic Force*.**

"Independent creation is a complete defense to copyright infringement." *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020); *see also Fodor v. Time Warner, Inc.*, 19 F.3d 27 (9th Cir. 1994) ("Even if two works are substantially similar, . . . there is no infringement liability if the challenged work was independently created."). Accordingly, "in the absence of direct evidence of copying," a plaintiff must "show[] that the defendant had access to the plaintiff's work *and* that the two works share similarities probative of copying." *Skidmore*, 952 F.3d at 1064 (emphasis added).

To establish access, there "must be a reasonable possibility" that the alleged infringer "view[ed] the plaintiff's work—not a bare possibility." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000), *overruled on other grounds* by *Skidmore*, 952 F.3d at 1069.[4] Such reasonable possibility "does not encompass any bare possibility in the sense that anything is possible." *Id.* "Access *may not be inferred through mere speculation or conjecture*." *Id*. (emphasis added). Thus, "[i]n order to support a claim of access,"—and avoid summary judgment—"a plaintiff must offer 'significant, affirmative and probative evidence'" of access. *Bernal*, 788 F. Supp. 2d at 1054 (granting summary judgment in favor of defendant talent agency) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003)).

This district has clearly articulated the specific factual showing that a plaintiff must make to avoid summary judgment where the plaintiff's theory of infringement

---

[4] In *Skidmore*, an en banc panel of the Ninth Circuit abrogated this Circuit's former "inverse ratio" rule, which has no application here. 952 F.3d at 1079. *Three Boys Music* remains good law apart from its discussion of the inverse ratio rule. *See Gray v. Hudson*, 28 F.4th 87, 97 (9th Cir. 2022) (citing *Three Boys Music* and recognizing its overruling on other grounds).

relies, as Jones does here, on allegations that (1) plaintiff provided the allegedly copied work to a business entity, such as a talent agency, and (2) that business entity was connected to the allegedly infringing work.

It is well-established that a plaintiff "cannot create a triable issue of access merely by showing 'bare corporate receipt' of her work by an individual who shares a common employer with the alleged copier."[5] *Bernal*, 788 F. Supp. 2d at 1056 (citations omitted). "Instead, to avoid summary judgment, a plaintiff must show that he submitted his work to an intermediary *who is in a position to transmit the plaintiff's work to the creators of the infringing work*. The intermediary can be a person who (1) has supervisory responsibility for the allegedly infringing project, (2) contributed ideas and materials to it, or (3) worked in the same unit as the creators." *Id.* (citations omitted, emphasis in original). "In sum, the plaintiff must show a sufficient nexus between the individual who possesses knowledge of a plaintiff's work and the creator of the allegedly infringing work." (*Id.*) (internal quotation marks and citations omitted).

The facts of *Bernal* are strikingly similar to the facts of this case—and as in *Bernal*, there is no nexus between the individuals who received the allegedly copied work and those who created the allegedly infringing work. In *Bernal*, the plaintiff submitted a screenplay, titled *Homeless*, to Andrew Ruf, a talent agent at Paradigm Talent Agency and Literary Agency ("Paradigm"). *Id.* at 1049. The series *Desperate Housewives* was later released on television, and the plaintiff claimed that the series was copied from her *Homeless* screenplay. *Ibid.* A different agent at Paradigm, Andrew Patman, represented Marc Cherry, the creator of *Desperate Housewives*. *Id.* "Paradigm also 'packaged' the *Desperate Housewives* series by attaching two of the actors represented by Paradigm, Teri Hatcher and Dana Delaney, to star in the series." *Id.*

---

[5] CAA, of course, does not and did not employ any party to this litigation.

The writer of *Homeless* sued Paradigm for copyright infringement on the theory that "Defendants' access to *Homeless* can be inferred through . . . collaboration" among talent agents at Paradigm. *Id.* at 1054. Plaintiff argued that because Paradigm was a relatively small agency and because Paradigm packaged *Desperate Housewives* and represented its creator, two of its lead actors, and its executive producers, "Ruf could have given *Homeless* to Patman, who had a close relationship with [the *Desperate Housewives* creator] Cherry and assisted him in the development of Desperate Housewives." *Id.*

The Court rejected this theory. It held that, "[h]ere, Plaintiff submitted her work to Ruf at Paradigm. Ruf is not Cherry's agent, and there is no evidence that Ruf had any contact with Cherry. Further, there is no evidence that Ruf had any supervisory responsibility for *Desperate Housewives* or any involvement with the creation of the series at any time." *Id.* at 1057. The Court also held that despite the fact that Paradigm was a relatively small agency and that Ruf and Patman worked together and had known each other for 10 years, "there is nothing in Ruf's and Patman's relationship" as colleagues at Paradigm "to indicate, beyond pure speculation, that Ruf passed the *Homeless* script onto Patman and/or Cherry." *Id.* at 1058. The Court therefore granted summary judgment in favor of Paradigm, because "[o]ther than the fact that Ruf and Patman worked for the same company, there is no evidence that would permit an inference of access." *Id.*

Other cases considering a similar fact pattern have all reached the same conclusion: to escape summary judgment, a plaintiff must provide evidence affirmatively connecting the individual who received the allegedly copied work with an intermediary who had control over the allegedly infringing work. For example, in the same year *Bernal* was decided, another Court of this district reached the exact same conclusion, holding that the receipt of a screenplay by a talent agency was "far too attenuated and speculative to support an inference of access" by another client of that agency. *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 828 (C.D. Cal. 2010).

12

That theory, rejected in both *Bernal* and *Gable*, is what Jones is alleging here: that receipt of a script by Mitchell and Lawrence supports an inference of access by an entirely unrelated CAA client, *Ad Astra* co-writer and director James Gray.

Other decisions on similar theories by plaintiffs all resulted in dismissal on summary judgment. *See, e.g.*, *Meta-Film Assocs., Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1357-58 (C.D. Cal. 1984) (summary judgment granted in favor of studio defendant where the plaintiff showed his work to a director who was under contract with the studio and worked on the studio lot, but could not demonstrate any connection between the recipient and the studio's allegedly infringing project); *Jones v. Blige*, 558 F.3d 485, 491 (6th Cir. 2009) (holding that submission of a demo CD to a record label was insufficient evidence of access by other artists who had dealings with that label); *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 52-53 (2d Cir. 2003) (affirming grant of summary judgment in favor of defendants where plaintiff presented no evidence that those who did receive his work had any relationship with the creators of the allegedly infringing work).

Here, the undisputed facts are even less favorable to Jones than they were to the plaintiff in *Bernal*. There is absolutely no evidence that CAA agents Cameron Mitchell or Brandon Lawrence ever had any contact with the writers of *Ad Astra* (James Gray and Ethan Gross), or with anyone involved in the creation of *Ad Astra*— much less served as "intermediaries" with supervisory responsibility over them. *See Bernal*, 788 F. Supp. 2d at 1057 ("Ruf is not Cherry's agent, and there is no evidence that Ruf had any contact with Cherry. Further, there is no evidence that Ruf had any supervisory responsibility for *Desperate Housewives* or any involvement with the creation of the series at any time.").

And Roeg Sutherland, Todd Feldman, and John Garvey, the CAA agents who represented *Ad Astra* co-writer and director James Gray, were never provided a copy of *Cosmic Force*, never discussed *Cosmic Force* with Mitchell or Lawrence, and were otherwise completely unaware of the existence of the *Cosmic Force* screenplay until

13

1   the initiation of this lawsuit. (SUF ¶¶ 8-17.)

2   Additionally, the CAA agents who represented James Gray had dramatically

3   less involvement in the creation of *Ad Astra* than Paradigm did in the creation of

4   *Desperate Housewives*. Paradigm "packaged" *Desperate Housewives* and it was

5   admitted that Paradigm "control[ed] one or more of the integral elements of the

6   show." *Bernal*, 788 F. Supp. 2d at 1049 n.3 (modifications in original). Here, CAA

7   did not have any right to supervise or control the content or substantive elements of

8   *Ad Astra*. (SUF ¶¶ 18-23.)

9   In sum, the only facts to which Jones can point are (1) he submitted his script

10  to two agents at CAA, and (2) entirely different agents at CAA interacted with the

11  co-writer and director of *Ad Astra*. Under *Bernal* and the authorities cited above,

12  these facts are insufficient as a matter of law to support a claim that the creators of

13  *Ad Astra* (namely, Gray) had access to the allegedly infringed *Cosmic Force*.

14  Accordingly, because Jones cannot "show[] that the defendant had access to the

15  plaintiff's work," CAA is entitled to summary judgment in its favor on Jones's

16  copyright infringement claims. *Skidmore*, 952 F.3d at 1064

17          **2.    Jones Fails To Establish That CAA Had Any Involvement In**

18          ***Ad Astra* Other Than Representing Its Co-Writer/Director**

19          **And A Few Actors.**

20              **(a)    CAA did not directly infringe *Cosmic Force*.**

21  Even assuming *arguendo* that *Ad Astra* copies protectable elements of *Cosmic*

22  *Force* (which it does not), and independent of the fact that the CAA agents

23  representing Gray had no access to *Cosmic Force*, CAA was not involved in any

24  alleged copying because CAA did not create *Ad Astra* and had no right to control or

25  supervise the film's creation.

26  "To establish a prima facie case of direct infringement, a plaintiff must show

27  ownership of the allegedly infringed material and demonstrate that the alleged

28  infringers violated at least one exclusive right granted to copyright holders under 17

14

U.S.C. § 106. . . . In addition, direct infringement requires the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017) (internal quotation marks and citations omitted); *see also Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1199 (N.D. Cal. 2004) ("To be liable for direct infringement, one must 'actively engage in' and 'directly cause' the copying.").

Jones baselessly alleges in his Fourth Amended Complaint that "the movie *Ad Astra* was financed and produced" by CAA (in addition to the other Defendants), that CAA and the other Defendants "produced" trailers of *Ad Astra*, and that CAA conducted sales of the movie *Ad Astra* "as a Sales Representative." (FAC ¶ 13.) Jones further asserts that CAA "released the movie *Ad Astra*." (FAC ¶ 42.)

The problem for Jones is that none of those allegations are true. CAA did not finance, produce, distribute, or serve as a "sales representative" for *Ad Astra*. (SUF ¶¶ 18-23.) CAA's role on *Ad Astra* was limited to acting as a talent agent for the film's co-writer/director and certain members of the cast. (SUF ¶ 18.) There is no admissible evidence that CAA either actively engaged in and directly caused any copying of Plaintiff's script or violated Plaintiff's copyright in any manner. Accordingly, CAA is entitled to summary judgment because there is no evidence that CAA directly infringed on Jones's script.

### (b)   CAA did not contribute to any infringement of *Cosmic Force*.

To prevail on a claim for contributory copyright infringement, a plaintiff must demonstrate that a defendant "(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Perfect 10*, 847 F.3d at 670; *see also Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1147 (9th Cir. 2018) ("We have adopted the well-settled rule that '[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement.'"). Even assuming *arguendo* that the writers and/or studio distributor of *Ad Astra* somehow

directly infringed on Jones's copyrights in *Cosmic Force*, Jones falls far short of establishing disputed facts that would support a claim against CAA for contributory infringement.

As explained in detail above, the undisputed evidence shows that while Jones sent *Cosmic Force* to two agents at CAA (Mitchell and Lawrence), neither of those individuals had any involvement in the creation or production of *Ad Astra*. (SUF ¶ 10.) And Sutherland, Feldman, and Garvey, the CAA agents who represented *Ad Astra*'s co-writer and director, never had access to *Cosmic Force*. (SUF ¶¶ 8-17.) Nor did Mitchell or Lawrence ever discuss *Cosmic Force* with Sutherland, Feldman, or Garvey. (SUF ¶¶ 12, 14, 16.)

It is therefore undisputed that (1) CAA did not provide *Cosmic Force* to the other defendants in this action; (2) CAA had no knowledge of any alleged "infringement" of *Cosmic Force* by any other defendant; (3) CAA did not "materially contribute" to any alleged infringement of *Cosmic Force*; and (4) CAA did not "induce" or "encourage" any other defendant to infringe *Cosmic Force*. Jones therefore fails to create a triable issue of fact regarding any alleged contributory infringement by CAA.

(c)     **CAA did not vicariously infringe *Cosmic Force*.**

CAA further cannot be vicariously liable for infringement of *Cosmic Force* because CAA did not have a supervisory relationship over the alleged direct infringers. A defendant is vicariously liable for copyright infringement only "if he enjoys a direct financial benefit from another's infringing activity *and* has the right and ability to supervise the infringing activity." *Ellison*, 357 F.3d at 1076 (emphasis added, internal quotation marks and citation omitted). The Ninth Circuit has held that "[v]icarious copyright liability is an 'outgrowth' of respondeat superior," and that as such, the right to supervise and control the alleged infringing activity is necessary to support a claim of vicarious liability. *See A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001).

16

1     Here, even if CAA commissioned certain individuals' income derived from

2  *Ad Astra*, the undisputed facts show that CAA had no supervision or control over

3  the writers, producers, or studio distributors of *Ad Astra*. (SUF ¶¶ 18-23.) Thus,

4  even if *Ad Astra* infringes on *Cosmic Force* (which it does not), Jones fails to create

5  a triable issue of fact that could support a claim of vicarious liability against CAA.

6     **C.   Jones's Breach Of Contract Claim Fails**

7         **1.   Jones Has No Evidence Of Access To *Cosmic Force* By**

8             **Anyone Involved In *Ad Astra*.**

9     Jones's breach of implied contract, *i.e.*, "idea theft", claim fails for largely the

10  same reasons as does his copyright infringement claim. To prevail on a claim for

11  breach of implied contract based on submission of a screenplay, a plaintiff must

12  establish that: "(1) they submitted the [s]creenplay for sale to [defendant]; (2) they

13  conditioned the use of the [s]creenplay on payment; (3) [defendant] knew or should

14  have known of the condition; (4) [defendant] voluntarily accepted the [s]creenplay;

15  (5) [defendant] actually used the [s]creenplay; and (6) the [s]creenplay had value."

16  *Benay v. Warner Bros. Ent.*, 607 F.3d 620, 629 (9th Cir. 2010), *overruled, in part,*

17  *on other grounds* by *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,

18  952 F.3d 1051 (9th Cir. 2020) (*en banc*) (citations omitted).[6] California law further

19  requires "that there be an expectation on both sides that use of the idea requires

20  compensation" in order to state a claim for breach of implied contract based on

21  "idea theft." *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 976 (9th Cir.

22  2011).

23     Importantly, California courts have also held that "[t]he framework for

24  proving use in an idea submission claim is parallel to the framework for showing

25  copying in a copyright claim." *Spinner v. Am. Broad. Companies, Inc.*, 215

26  Cal.App.4th 172, 186 (2013). To prevail on an idea theft claim, a plaintiff must

27  _____

28  [6] *See supra* Note 4, discussing the holding in *Skidmore*.

17

therefore show that the alleged infringer had access to the allegedly infringing work. *Id.* (citing federal copyright cases concerning access); *see also Hollywood Screentest of Am., Inc. v. NBC Universal, Inc.*, 151 Cal. App. 4th 631, 648 (2007) (affirming summary judgment in defendant studio's favor and rejecting invitation to "draw inferences based on general similarities and timing" where "Appellants point to no evidence that NBC actually used their ideas").

In *Spinner*, the California Court of Appeal affirmed the Superior Court's grant of summary judgment in defendant American Broadcasting Companies' ("ABC") favor, holding that plaintiff's evidence of access was "insufficient as a matter of law because he relie[d] on a bare possibility of theoretical access premised on mere speculation." *Id.* at 187. In that case, plaintiff submitted a script entitled "L.O.S.T." to ABC in 1977. *Id.* at 175. The plaintiff's "theory of access [was] that the ABC drama development executives who were involved in the creation of *LOST* . . . had a reasonable opportunity to view the 1977 Script because ABC had a policy of permanently retaining unreturned scripts, and the script must have been present somewhere in a 'script library' at ABC." *Id.* at 187. The Court of Appeal held that such a connection was "speculation, conjecture, or guess work," and also that "the nexus between the people to whom [plaintiff] Spinner submitted his work and the actual creators of *LOST* does not remotely approach strong." *Id.* at 185, 187.

Because Jones's copyright claims must fail for lack of evidence of access to *Cosmic Force* by anyone connected to *Ad Astra*, so too must Jones's breach of contract claim fail. The crux of Jones's implied contract claim is the allegation that CAA and the other defendants in this action "impliedly agreed to hold the business discussions regarding the Script in confidence, to only share the confidential information with others for the purpose of evaluating a business opportunity with Plaintiff and to compensate Plaintiff and de Passe Jones Entertainment if the Script *Cosmic Force* was licensed, sold or used by Defendants." (FAC ¶ 80.)

Jones alleges a breach by CAA "upon information and belief" only; he alleges

18

1   that "CAA ha[s] shared Plaintiff's confidential business information with others,

2   including Defendants RT Features, RT Features US, James Gray and Ethan Gross."

3   (FAC ¶ 81.) The undisputed evidence shows, however, that this never happened (as

4   discussed extensively above).

5       Jones also alleges that "CAA[] used and profited from the use of[] Plaintiff's

6   copyrighted work *Cosmic Force*." (FAC ¶ 83.) Again, as explained in the preceding

7   sections, there is absolutely zero evidence that the two CAA agents to whom Jones

8   transmitted *Cosmic Force* ever shared that script with anyone, much less *used* the

9   script. *See Benay*, 607 F.3d at 629 (holding that an implied contract claim based on

10  screenplay submission requires a showing that "Defendants actually used the

11  [s]creenplay"). Thus, even assuming *arguendo* that CAA entered into an implied

12  contract with Jones, because Jones has no evidence whatsoever that CAA breached

13  the alleged terms of that contract by sharing or using *Cosmic Force*, Jones's implied

14  contract claim fails on summary judgment.

15      **2.    Jones Does Not And Cannot Allege That CAA Offered To**

16      **Compensate Him Directly.**

17      Jones's implied contract claim against CAA also fails because nowhere does

18  Jones allege that he reasonably expected CAA, a talent agency, to *directly*

19  compensate him. Nor could Jones make such an outlandish allegation. Jones is, by

20  his own description, a sophisticated party: he is an Emmy-nominated veteran

21  entertainment industry executive. (FAC ¶ 1.) Jones alleges that he met with Mitchell

22  in 2015 to seek CAA's potential assistance with "the licensing and sale of the

23  [*Cosmic Force*] Script." (FAC ¶ 23.) Jones does not go so far as to allege, in his

24  complaint or in his deposition testimony, that he ever expected to be compensated

25  *directly by CAA*. (*Id*.; SUF ¶ 24.) This is because Jones knows that, to put it bluntly,

26  artists pay talent agencies like CAA for their services—*not the other way around*.

27  Thus, regardless of whether Jones was seeking CAA's direct representation to help

28  sell the script outright, CAA's assistance and services in packaging the script with

19

potential directors, actors, or other talent, or CAA's help to secure financing to develop and produce the script, Jones does not and cannot plausibly allege that he reasonably expected to be directly compensated in any way *by CAA*. Accordingly, because Jones does not and cannot allege an obligation owed by CAA to compensate Jones for *Cosmic Force* in any way, Jones's breach of contract claim must fail.

## V.   **CONCLUSION**

For the foregoing reasons, Defendant CAA respectfully requests that the Court grant its Motion in its entirety and enter summary judgment in CAA's favor on all claims asserted by Jones.

DATED:  May 31, 2023                    EISNER, LLP

By: _____
JEREMIAH REYNOLDS
Attorneys for Defendant,
Creative Artists Agency, LLC

## **STATEMENT OF COMPLIANCE WITH LOCAL RULE 11-6.1**

The undersigned, counsel of record for Creative Artists Agency, LLC, certifies that this Memorandum of Points and Authorities contains 6,520 words, which complies with the word limit of Local Rule 11-6.1.

DATED:  May 31, 2023                    EISNER, LLP

By: _____
JEREMIAH REYNOLDS
Attorneys for Defendant,
Creative Artists Agency, LLC