1  DAVID ARONOFF (SBN 125694)
       DAronoff@FoxRothschild.com
2  JOSHUA BORNSTEIN (SBN 311658)
       JBornstein@FoxRothschild.com
3  FOX ROTHSCHILD LLP
   Constellation Place
4  10250 Constellation Blvd, Suite 900
   Los Angeles, CA 90067
5  Telephone:   310.598.4150
   Facsimile:   310.556.9828
6
   Attorneys for Defendants
7  TWENTIETH CENTURY FOX FILM
   CORPORATION, THE WALT DISNEY
8  COMPANY, 20TH CENTURY STUDIOS, INC.,
   RT FEATURES U.S., LLC, JAMES GRAY,
9  and ETHAN GROSS

10

11                 UNITED STATES DISTRICT COURT

12                 CENTRAL DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  PHILLIP MADISON JONES, | Case No. 2:21-CV-05890-FWS (SKx) |
| 15              Plaintiff, | Hon. Fred W. Slaughter |
| 16         v. | **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, OF DEFENDANTS JAMES GRAY, ETHAN GROSS AND RT FEATURES U.S., LLC ON COUNTS ONE THROUGH THREE OF FOURTH AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. RULE 56; MEMORANDUM OF POINTS AND AUTHORITIES** |
| 17  TWENTIETH CENTURY FOX FILM CORPORATION d/b/a 20TH CENTURY STUDIOS; THE WALT DISNEY COMPANY; 20TH CENTURY STUDIOS, INC.; CREATIVE ARTISTS AGENCY, LLC; RT FEATURES; RT FEATURES U.S. LLC, JAMES GRAY, AND ETHAN GROSS, | |
| 18 | |
| 19 | |
| 20 | |
| 21              Defendants. | |
| 22 | |
| 23 | [SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS AND CONCLUSIONS OF LAW; DECLARATION OF JAMES GRAY; DECLARATION OF ETHAN GROSS; DECLARATION OF RODRIGO TEIXEIRA; DECLARATION OF GLORIA FAN; DECLARATION OF SCOTT AVERSANO; DECLARATION OF YARIV MILCHAN; DECLARATION OF MIKE STEIN; DECLARATION OF |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOHN DAVIS; DECLARATION OF
BOB GALE; DECLARATION OF
DAVID ARONOFF; NOTICE OF
LODGING; AND [PROPOSED]
ORDER FILED CONCURRENTLY]

Date:          July 13, 2023
Time:          10:00 AM
Courtroom:     10D

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

      **PLEASE TAKE NOTICE** that on July 13, 2023, at  10:00 a.m., or as soon thereafter as the parties may be heard, or at such other date and time set by the Court, before the Hon. Fred W. Slaughter, United States District Court Judge, in Courtroom 10D of the Ronald Reagan Federal Building and United States Courthouse, located at 411 West 4th Street, Santa Ana, CA 92701-4516, defendants James Gray ("Gray"), Ethan Gross ("Gross"), and RT Features U.S., LLC ("RTF"), (collectively, the "Writer Defendants") will and hereby do move under Fed. R. Civ. P. Rule 56 for the entry of summary judgment or, in the alternative, partial summary judgment, dismissing Counts One through Three of the Fourth Amended Complaint ("FAC") (Dkt. No. 126) of Phillip Madison Jones ("Plaintiff") on the grounds that the evidence does not raise genuine issues for trial on Plaintiff's claims against the Writer Defendants ("Motion").

      **PLEASE TAKE FURTHER NOTICE** of Plaintiff's refusal to meet and confer with the Writer Defendants regarding this Motion.  Spanning the course of several weeks, multiple attempts have been made by counsel for the Writer Defendants to meet and confer with Plaintiff's counsel concerning this Motion pursuant to Local Rule 7-3. *See* Declaration of David Aronoff, ¶¶ 6-21.  Plaintiff's counsel, however, have refused to conduct a Local Rule 7-3 conference of counsel to address the issues raised by this Motion.  *Id*.  Because Plaintiff's counsel have refused to meet and confer in violation of their duties under Local Rule 7-3, the Writer Defendants had no recourse but to file their Motion without certifying compliance with said Local Rule.  *Id*., ¶ 21.

      This Motion is based upon this Notice and the attached Memorandum of Points and Authorities, the concurrently-submitted declarations of James Gray, Ethan Gross, Rodrigo Teixeira, Yariv Milchan, Scott Aversano, Gloria Fan, John Davis, Mike Stein, Bob Gale, and David Aronoff, Exhibits 1-23, the Notice of Lodging of Exhibits 14 and 15, the Separate Statement of Undisputed Material Facts and Conclusions of Law, the [Proposed] Order, all of the pleadings, papers and other materials on file in this action,

1   and such argument, evidence and additional matters that may be presented at or before

2   the hearing on this Motion.

3   Dated:  May 31, 2023                          **FOX ROTHSCHILD LLP**

4

5                                                  _/S/ DAVID ARONOFF_
                                                   David Aronoff
6                                                  Joshua Bornstein
                                                   Attorneys for Defendants
7                                                  TWENTIETH CENTURY FOX FILM
                                                   CORPORATION, THE WALT DISNEY
8                                                  COMPANY, 20TH CENTURY
                                                   STUDIOS, INC., RT FEATURES U.S.,
9                                                  LLC, JAMES GRAY, and ETHAN
                                                   GROSS

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS GRAY, GROSS AND RTF

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION.................................................................1

II.  RELEVANT BACKGROUND ...........................................2

   A.  The Creation and Dissemination of the Works at Issue.................2

      1.  The Independent Prior Creation of AD ASTRA by Gray and Gross Without Access to COSMIC FORCE.................2

      2.  Plaintiff's Creation of COSMIC FORCE and His Efforts to Pitch the Project to Third Parties.................5

   B.  The Works at Issue .......................................................7

      1.  AD ASTRA .......................................................7

      2.  COSMIC FORCE .................................................7

III.  OVERVIEW OF APPLICABLE LEGAL PRINCIPLES ...................8

   A.  The Legal Standard for Summary Judgment Under Rule 56...........8

   B.  Fundamentals of a Copyright Infringement Claim ....................9

IV.  SUMMARY JUDGMENT MUST BE ENTERED FOR THE WRITER DEFENDANTS ON PLAINTIFF'S COPYRIGHT CLAIMS...................11

   A.  Plaintiff Cannot Raise a Genuine Issue as to "Access" ...............11

   B.  Plaintiff Cannot Raise a Triable Issue as to Striking Similarity .......13

   C.  The Independent Creation of AD ASTRA Precludes Infringement.......13

   D.  AD ASTRA is Not Substantially Similar to COSMIC FORCE in Protected Expression Under the Extrinsic Test .................15

      1.  The Plots/Sequences of Events Are Not Substantially Similar ...............15

      2.  The Characters Are Not Substantially Similar.........................17

      3.  The Settings of the Works Are Not Substantially Similar.................19

      4.  The Themes of the Works Are Not Substantially Similar .................19

      5.  The Moods of the Works Are Not Substantially Similar.................20

      6.  The Dialogue in the Works is Not Substantially Similar.................20

      7.  The Pace of the Works is Not Substantially Similar.................20

      8.  The AD ASTRA Screenplay and Trailers are Not Substantially Similar to COSMIC FORCE .................21

1

        9.    Summary of Extrinsic Test Factors ........................................................21

2

V.   CONCLUSION ........................................................................................22

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS GRAY, GROSS AND RTF

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A & M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ........................................................................11

*Basile v. Warner Bros. Entm't*,
   No. CV155243DMGMRWX, 2016 WL 5867432 (C.D. Cal. Jan. 4,
   2016) ..............................................................................................................20

*Baxter v. MCA., Inc.*,
   812 F.2d 421 (9th Cir. 1987) ..........................................................................13

*Benay v. Warner Bros. Entm't, Inc.*,
   607 F.3d 620 (9th Cir. 2010) ...............................................................8, 14, 17

*Benjamin v. Walt Disney Co.*,
   No. CV 05-2280GPS, 2007 WL 1655783 (C.D. Cal. June 5, 2007)...........*passim*

*Berkic v. Crichton*,
   761 F.2d 1289 (9th Cir. 1985) ..................................................................10, 15

*Bernal v. Paradigm Talent & Literary Agency*,
   788 F. Supp. 2d 1043 (C.D. Cal. 2010) .......................................11, 13, 17, 19

*Briggs v. Blomkamp*,
   70 F. Supp. 3d 1155 (N.D. Cal. 2014) .............................................................13

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) ..........................................................................10

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).........................................................................................8

*Christian v. Mattel, Inc.*,
   286 F.3d 1118 (9th Cir. 2002) .......................................................10, 12, 13, 15

*DC Comics v. Towle*,
   802 F.3d 1012 (9th Cir. 2015) ........................................................................17

*Dimmie v. Carey*,
   88 F. Supp. 2d 142 (S.D.N.Y. 2000) ...............................................................14

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991)................................................................................9

*Fulks v. Knowles-Carter*,
  207 F. Supp. 3d 274 (S.D.N.Y. 2016) .............................................21

*Funky Films, Inc. v. Time Warner Ent't Co.*,
  462 F.3d 1072 (9th Cir. 2006) ..............................................10, 15

*Granite Music Corp. v. United Artists Corp.*,
  532 F.2d 718 (9th Cir. 1976) ...............................................................9

*Kouf v. Walt Disney Pictures & Television*,
  16 F.3d 1042 (9th Cir. 1994) ...............................................10, 15

*Litchfield v. Spielberg*,
  736 F.2d 1352 (9th Cir. 1984) ..........................................................10

*Loomis v. Cornish*,
  836 F.3d 991 (9th Cir 2016) ..................................................8, 11, 12

*Lucky Break Wishbone Corp. v. Sears, Roebuck & Co.*,
  528 F. Supp. 2d 1106 ...........................................................................11

*Marcus v. ABC Signature Studios, Inc.*,
  279 F. Supp. 3d 1056 (C.D. Cal. 2017) ......................................19, 20

*Meta-Film Assocs., Inc. v. MCA, Inc.*,
  586 F. Supp. 1346 (C.D. Cal 1984) ..........................................12, 21

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005).............................................................................11

*Moore v. Lightstorm Entm't*,
  992 F. Supp. 2d 543 (D. Md. 2014).................................................14

*Muller v. Twentieth Century Fox Film Corp.*,
  794 F. Supp. 2d 429 (S.D.N.Y. 2011) ............................................14

*Murray Hill Pubs. v. Twentieth Century Fox*,
  361 F.3d 312 (6th Cir. 2004) ....................................................*passim*

*Narell v. Freeman*,
  872 F.2d 907 (9th Cir. 1989) ............................................................20

*Perfect 10, Inc. v. Amazon.com, Inc.,*
    508 F.3d 1146 (9th Cir. 2007) ....................................................................11

*Religious Tech. Ctr. v. Netcom On-Line Comm. Servs., In*c.,
    907 F. Supp. 1361 (N.D. Cal. 1995).........................................................11

*Rentmeester v. Nike, Inc.,*
    883 F. 3d 1111 (9th Cir. 2018)............................................................11, 13

*Rice v. Fox Broad. Co.,*
    330 F.3d 1170 (9th Cir. 2003) .....................................................................9

*Seals-McClellan v. Dreamworks, Inc.,*
    120 Fed. Appx. 3 (9th Cir. 2004)................................................................13

*Selle v. Gibb,*
    741 F.2d 896 (7th Cir. 1984) .......................................................................9

*Shame on You Prods. v. Banks,*
    120 F. Supp. 3d 1123 (C.D. Cal. 2015) .....................................................10

*Shaw v. Lindheim,*
    809 F. Supp. 1393 (C.D. Cal. 1992) ...........................................................18

*Silberstein v. Fox Entm't Group, Inc.,*
    424 F. Supp. 2d 616 (S.D.N.Y. 2004) ........................................................14

*Stabile v. Paul Smith Ltd.,*
    137 F. Supp. 3d 1173 (C.D. Cal. 2015) ................................................13, 14

*Stewart v. Wachowski,*
    574 F. Supp. 2d 1074 (C.D. Cal. 2005) ......................................................13

*Tedesco v. Pepe,*
    No. CV 11-6203-JFW(JCx), 2012 WL 13012419 (C.D. Cal. July 17,
    2012) .....................................................................................................12, 14

*Three Boys Music Corp. v. Bolton,*
    212 F.3d 477 (9th Cir. 2000) ..................................................................12, 14

*Unicolors, Inc. v. Urban Outfitters, Inc.,*
    853 F.3d 980 (9th Cir. 2017) ...................................................................11, 13

*Wavelength Film Co. v. Columbia Pictures Indus., Inc.,*
    631 F. Supp. 305 (N.D. Ill. 1986).............................................................19

*Weygand v. CBS, Inc.*,
    No. 96-4540-WMB, 1997 WL 377980 (C.D. Cal. May 21, 1997) ...................14

**Other Authorities**

Fed. R. Civ. P. 56 ...............................................................................*passim*

Genesis 2:4-3:24 (King James) .............................................................18

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.   INTRODUCTION**

This Motion is brought by defendants James Gray ("Gray"), Ethan Gross ("Gross") and RT Features U.S., LLC ("RTF") ("the Writer Defendants") under Fed. R. Civ. P. Rule 56 for summary judgment on the claims alleged against them in the First through Third Counts of Plaintiff's Fourth Amended Complaint ("FAC") (Dkt. No. 126) on the grounds that the evidence fails to raise genuine issues for trial against them.[1]

The First through Third Counts of the FAC allege that the film AD ASTRA (sometimes, "the Film"), written by defendant screenwriters Gray and Gross and developed by RTF, supposedly infringes Plaintiff's copyright in his unproduced screenplay COSMIC FORCE (sometimes, "Plaintiff's Work").   But no substantial evidence supports Plaintiff's infringement claims, so they should be dismissed:

First, there is no proof that Gray, Gross, or RTF had "access" to COSMIC FORCE, *i.e.*, a reasonable opportunity to view or copy it, during the creation of AD ASTRA and the works at issue are not "strikingly similar" – which is a term of art referring to similarities so strong that independent creation of the works is impossible.

Second, the evidence is undisputed that AD ASTRA was created independently of COSMIC FORCE – especially since the key creative elements of AD ASTRA were independently written by Gray and Gross **before** Plaintiff wrote COSMIC FORCE.

Third, there is no genuine issue for trial that AD ASTRA is substantially similar in copyright-protected expression to COSMIC FORCE after the Court "filters out" (as it must) unprotected expression – such as stock scenes and scenes-à-faire of the science fiction genre and the elements of AD ASTRA created prior to COSMIC FORCE.

---

[1]  In Count Four of the FAC, Plaintiff also alleges a Breach of Contract – Implied Contract claim.  *See* Dkt. No. 126 ¶¶ 78-84.  But this claim is not alleged against moving defendants Gray, Gross or RTF.  *Id.*  In fact, they were dismissed from earlier iterations of this claim.  *See* Dkt. No. 102 (dismissing breach of implied contract claim in Third Amended Complaint as to Gray, Gross and RTF without leave to amend); *see also* Dkt. No. 124 (ordering Plaintiff to "revise the [his initial draft of the FAC] to clarify that Count 4 is not asserted against Defendants RT Features U.S., LLC, Gray, and Gross").

## II.   RELEVANT BACKGROUND

### A.   The Creation and Dissemination of the Works at Issue

#### 1.   The Independent Prior Creation of AD ASTRA by Gray and Gross Without Access to COSMIC FORCE

Defendants Gray and Gross wrote most of the key elements of AD ASTRA **prior** to the creation of Plaintiff's COSMIC FORCE – which was not even completed by Plaintiff until December 2014, months after Gray and Gross had independently drafted their first versions of AD ASTRA.[2]   By June 2007, Gray and Gross had begun developing a sci-fi film in which a space voyager undertakes a dangerous journey across the solar system to confront an older father figure who had gone rogue on an earlier space mission that he commanded.[3]   They were inspired by the famous novel HEART OF DARKNESS by Joseph Conrad and Francis Ford Coppola's film *Apocalypse Now* (based on HEART OF DARKNESS).[4]   Gray and Gross never learned of COSMIC FORCE until this lawsuit was filed, many months after AD ASTRA had been released to the public.[5]

On February 21, 2013, Gray met with Rodrigo Teixeira ("Teixeira") and Sophie Mas ("Mas") of the defendant film production company RTF in New York City and pitched the sci-fi idea that Gray and Gross had been developing.[6]   RTF agreed to buy and produce the script.[7]   Under their agreement with RTF, Gray and Gross wrote a November 29, 2013 draft of AD ASTRA ("11/29/13 Script").[8] The 11/29/13 Script follows astronaut Major Roy McBride ("Roy") on a dangerous space mission from the Earth to the Moon, then to Mars, and then to the rings of Saturn, in search of the rogue

---

[2] Declaration of James Gray ("Gray Dec."), ¶¶ 4-10; Declaration of Ethan Gross ("Gross Dec."), ¶¶ 4-9; Declaration of Rodrigo Teixeira ("Teixeira Dec."), ¶¶ 3-7; Exs. 1-5.

[3] Gray Dec., ¶ 4; Gross Dec., ¶ 4.

[4] Gray Dec., ¶ 4; Gross Dec., ¶ 4.

[5] Gray Dec., ¶¶ 3, 19-27; Gross Dec., ¶¶ 3, 11-15.

[6] Gray Dec., ¶ 5; Teixeira Dec., ¶¶ 4-5.

[7] Gray Dec., ¶ 5; Teixeira Dec., ¶¶ 4-5.

[8] Gray Dec., ¶ 6; Gross Dec., ¶ 5.; Teixeira Dec., ¶ 6; Ex. 1.

commander of the Lima Project, Dr. John Gates – who was the father of Roy's tragically killed fiancé and who had also been Roy's space academy instructor.[9]  The 11/29/13 Script culminates with Roy killing Gates.[10]

On December 17, 2013, Gray and Gross again met in New York with Teixeira and Mas, who suggested changes to the 11/29/13 Script, such as including more details about the Lima Project's mission.[11]  By August 27, 2014, Gray wrote a new document entitled "ADASTRAfairytale" outlining the story with new changes ("8/27/14 Outline") and emailed it to Gross and his colleague Chris Spelman.[12]  In the 8/27/14 Outline, the rogue mission commander of the Lima Project became Roy's own father (instead of the father of Roy's fiancé), and he ultimately is killed by Roy.[13]

After further refinements in 2014,[14] by May 22, 2015, Gray and Gross had completed a new draft ("5/22/15 Script") corresponding to the changes in the 8/27/14 Outline but with the Lima Project now located in the rings of Neptune.[15]  The 5/22/15 Script otherwise follows the primary storyline established by the 11/29/13 Script as modified by the 8/27/14 Outline in depicting astronaut Roy McBride as he embarks upon a dangerous mission from Earth to the Moon, then to Mars, and then to Neptune, in search of the rogue mission commander of the Lima Project, his own father H. Clifford McBride, who was believed to have been tragically lost in space 18 years previously.[16]  The 5/22/15 Script ends with Roy finding his own father kept alive in a cryogenic state on the Lima Project, and then killing him by releasing him into space

---

[9] Gray Dec., ¶ 6; Gross Dec., ¶ 5.; Teixeira Dec., ¶6; Ex. 1.
[10] Gray Dec., ¶ 6; Gross Dec., ¶ 5.; Ex. 1.
[11] Gray Dec., ¶ 7; Gross Dec., ¶ 6; Teixeira Dec., ¶ 6.
[12] Gray Dec., ¶ 8; Gross Dec., ¶ 7; Ex. 2.
[13] Gray Dec., ¶ 8; Gross Dec., ¶ 7; Ex. 2.
[14] Gray Dec., ¶ 9; Gross Dec., ¶ 8; Exs. 3-4.
[15] Gray Dec., ¶ 10; Gross Dec., ¶ 9; Teixeira Dec., ¶ 7; Ex. 5.
[16] Gray Dec., ¶ 10; Gross Dec., ¶ 9; Teixeira Dec., ¶ 7; Ex. 5.

before exploding the Lima Project and undertaking the space flight back to Earth.[17]

During or about November 2016, non-party New Regency Productions, Inc. ("New Regency") was brought into the project by RTF as a producer and financer.[18] Because New Regency had a preexisting film distribution output deal with defendant Twentieth Century Fox Film Corporation ("TCFFC"), in late February 2017, New Regency provided to TCFFC an AD ASTRA script by Gray and Gross dated February 22, 2017 ("the 2/22/17 Script") – which was in keeping with New Regency's standard practice of giving TCFFC advance notice of the films it would be distributing under the their output deal.[19]  A few months thereafter in late July 2017, TCFFC received a newly-revised AD ASTRA screenplay written by Gray and Gross dated July 23, 2017 ("the 7/23/17 Script") – which was very similar to AD ASTRA as it ultimately was released to the public.[20]  On August 4, 2017, TCFFC executive Scott Aversano ("Aversano") provided TCFFC's first creative notes on AD ASTRA, commenting, among other things, that "Roy's eventual arrival at Lima station could be more climactic if Roy doesn't already know how his father feels about him."[21]  Because Aversano's comments were not seen as essential and principal photography of the film was commencing only a few days later, these comments did not result in any material changes to the script.[22] Principal photography of the 8-week shoot began on August 10, 2017.[23]

Based on audience feedback at several AD ASTRA test screenings in May and July 2018, seven days of "reshoots" were filmed commencing on March 15, 2019, mainly of scenes between Roy and Eve.[24]  Also, several new writers were engaged

---

[17] Gray Dec., ¶ 10; Gross Dec., ¶ 9; Teixeira Dec., ¶ 7; Ex. 5.

[18] Teixeira Dec., ¶ 9; Declaration of Yariv Milchan ("Milchan Dec."), ¶ 3.

[19] Declaration of Scott Aversano ("Aversano Dec."), ¶ 4.

[20] Aversano Dec., ¶ 5; Gray Dec., ¶ 13; Gross Dec., ¶ 10; Teixeira Dec., ¶ 10; Ex. 11.

[21] Aversano Dec., ¶ 5; Gray Dec., ¶ 14; Ex. 12.

[22] Aversano Dec., ¶ 6; Gray Dec., ¶ 14.

[23] Aversano Dec., ¶ 7; Gray Dec., ¶ 15; Teixeira Dec., ¶ 10.

[24] Gray Dec., ¶¶ 15-16.

during the first half of 2019 to write voiceover dialogue expressing Roy's inner emotions and providing story exposition.[25]  On August 29, 2019, AD ASTRA premiered at the Venice Film Festival.[26]  In their creation of AD ASTRA during the period from 2007 through 2019, neither Gray nor Gross (nor RTF) ever received COSMIC FORCE; in fact, they only learned of the work after the filing of Plaintiff's lawsuit.[27]

> ## 2.   Plaintiff's Creation of COSMIC FORCE and His Efforts to Pitch the Project to Third Parties

Plaintiff alleges he completed COSMIC FORCE in the fourth quarter of 2014.[28] While Plaintiff claims that the Writer Defendants copied COSMIC FORCE, he admits he has no evidence to support his claims other than his own comparison of the two works.[29]  Plaintiff admits he has no evidence that Gray or Gross had access to COSMIC FORCE while writing AD ASTRA.[30] Instead, Plaintiff **speculates** that there were three paths by which third-parties to whom he sent COSMIC FORCE may have shared it with Gray or Gross.  But no substantial evidence supports this speculation and conjecture:

*First*, Plaintiff claims that on November 10, 2015, he submitted his COSMIC FORCE script to Cameron Mitchell ("Mitchell"), an agent at CAA, and Derek Dudley ("Dudley") of Freedom Road Entertainment.[31]  But Plaintiff admits he has no evidence that either Mitchell or Dudley provided COSMIC FORCE to Gray or Gross.[32]  Neither Mitchell nor Dudley had any involvement with AD ASTRA, nor did they ever have any communications with Gray or Gross.[33]  Although Gray was represented by different

---

[25] Gray Dec., ¶16; Ex. 13.

[26] Gray Dec., ¶ 17.

[27] Gray Dec., ¶¶ 3, 19-27; Gross Dec., ¶¶ 3, 11-15; *see also*, Teixeira Dec., ¶¶ 3, 12.

[28] Dkt. No. 126, ¶ 22.

[29] Ex. 19 [Deposition of Phillip Madison Jones] at 244:5 – 245:23.

[30] Ex. 19 at 100:22 – 101:23; 178:2-12; 243:6-14.

[31] Dkt. No. 126, ¶¶ 25-27.

[32] Ex. 19 at 243:6-14.

[33] Gray Dec. ¶ 19; Gross Dec. ¶ 11.

agents at CAA, Roeg Sutherland ("Sutherland"), Todd Feldman ("Feldman"), and John Garvey ("Garvey"), it is undisputed that they never gave COSMIC FORCE to Gray.[34]

**Second**, on February 24, 2016, Plaintiff submitted a draft of COSMIC FORCE to John Davis ("Davis") and Mike Stein ("Stein") of Davis Entertainment Company ("DEC"), an independent production company that had offices on the TCFFC studio lot.[35]  On or around February 27, 2016, Stein read COSMIC FORCE on behalf of DEC, and gave the script a grade of "C-minus" based on poor writing and weak characters and dialog.[36] Stein passed on the script and never shared COSMIC FORCE with anyone.[37] Stein, Davis, and DEC also had no contact with Gray or Gross concerning COSMIC FORCE and were not involved in any way with AD ASTRA.[38]

**Finally**, Plaintiff contends that he submitted COSMIC FORCE to Gloria Fan ("Fan"), a former television executive of a sister company to TCFFC called Fox 21 Television Studios ("Fox 21").[39]  On April 7, 2016, Plaintiff sent Fan an email attaching two episodes of a made-for-television version of COSMIC FORCE and, subsequently, he also sent her a "look book" of images illustrating his ideas for COSMIC FORCE.[40] Fan was not interested in COSMIC FORCE and never shared it with Gray, Gross, or anyone else.[41] Fan and Fox 21 also were not involved in AD ASTRA in any way.[42]

---

[34] Gray Dec. ¶ 20; *see also* Summary Judgment Motion filed by defendant CAA and the declarations of Sutherland, Feldman, and Garvey submitted therewith.

[35] Dkt. No. 126, ¶¶ 32-34.

[36] Declaration of Mike Stein ("Stein Dec.") ¶ 6; Ex. 16.

[37] Stein Dec., ¶ 7.

[38] Stein Dec., ¶ 8; Declaration of John Davis ("Davis Dec."), ¶¶ 5-8; Gray Dec., ¶ 21; Gross Dec., ¶ 12; Aversano Dec., ¶ 13.

[39] Ex. 20 (Plaintiff's Response to Interrogatory No. 10) at 18:15-19:12; Declaration of Gloria Fan ("Fan Dec."), ¶ 2.

[40] Fan Dec., ¶¶ 5-6; Ex. 17.

[41] Fan Dec., ¶¶ 6-9; *see also*, Exs. 17-18.

[42] Fan Dec. ¶¶ 9-10.  Plaintiff also contends that he first submitted COSMIC FORCE in December 2014 to some unknown person at "Universal Pictures," but Plaintiff says he cannot remember the name or any identifying details of this person.  *See* Ex. 19 at 47:4-49:14, 64:13-65:25; 70:1-5. According to Plaintiff, this unidentified person at Universal Pictures "passed" on COSMIC FORCE.  *Id.* at 65:14-25. In any event, this purported pitch of COSMIC FORCE fails to raise any genuine issues and is not relevant to the

Most importantly, **<u>before</u>** Plaintiff's above-described submissions of COSMIC FORCE to Mitchell and Dudley in November 2015, to Davis Entertainment in February 2016, and to Fan in April 2016, the key elements of AD ASTRA had already been created by Gray and Gross and were embodied in the 11/29/13 Script, the 8/27/14 Outline, and the 5/22/15 Script.  *See* Exs. 1-2, 5.

## B.   <u>The Works at Issue</u>

### 1.   <u>AD ASTRA</u>

AD ASTRA (Ex. 14), released in September 2019, is an introspective science fiction film, set in the near future, which centers on the inner voyage of astronaut Major Roy McBride ("Roy"), a man in his 40s, as he journeys to the Moon, Mars and then Neptune seeking the origins of mysterious power surges that threaten Earth.  This trajectory leads him to his lost father, H. Clifford McBride ("Clifford"), a research astronaut who was believed to be dead for 16 years after his spacecraft, the Lima Project, vanished during its search for extraterrestrial life.  After the power surges are traced to the Lima Project, Roy is sent to Mars to attempt communications with Clifford.  Roy is supposed to return to Earth, but he defies orders and stows away on the spaceship Cepheus heading to the Lima Project, leaving a trail of death in his wake.  On reaching the Lima Project, Roy finds that Clifford has killed his crew, who had mutinied when Clifford refused to return to Earth.  Roy tries to rescue his father, but Clifford launches himself into the abyss of space, killing himself.  Roy returns home to his once-estranged wife Eve with a new appreciation that "we're all we've got" in the universe.

### 2.   <u>COSMIC FORCE</u>

COSMIC FORCE (Ex. 21) is a science fiction action-thriller that follows Logan Decker ("Logan"), a 26-year-old military athlete who with his teammate, Owen Watson ("Owen"), sets out to find the lost spaceship Polaris, which went missing 20 years ago under the command of Logan's father, Colonel Vince Decker ("Decker").  Logan and

---

analysis herein as neither Universal Pictures nor any of its employees were involved in the creation of AD ASTRA.  Gray Dec., ¶ 23; Aversano Dec., ¶ 15.

Owen compete in the war-game sport ProtoZone, which is played with a high-tech morphing putty known as Proto-Morpho-Plasm ("P.M.P.") that creates realistic virtual opponents. After a mysterious alien power source known as "Darklight" is traced to the Polaris, Logan is recruited to recover it by Von Elvin Raimes ("Von"), the Chairman of "De Facto," a cabal of trillionaires that runs the world. Later, Von is revealed to be an alien who many years earlier stole Darklight from evil extraterrestrials. Logan and his crew of the spacecraft Nexus, including Owen and Von, find the Polaris in the Kuiper Belt[43] and discover that years earlier Decker had exposed his crew to mutant P.M.P., causing their bodies to fuse together, to prevent them from revealing the secret of Darklight. He had been coerced to do this by an evil member of De Facto. Logan confronts his father and seizes the Darklight. He and his crew then destroy the Polaris, killing Decker and his crew but triggering an alarm to a malevolent alien world.

## III.  OVERVIEW OF APPLICABLE LEGAL PRINCIPLES

### A.  The Legal Standard for Summary Judgment Under Rule 56

In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the U.S. Supreme Court held that Fed. R. Civ. P. Rule 56 "mandates the entry of summary judgment . . . against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322 (emphasis added). In copyright infringement actions, summary judgment is often granted and affirmed where the plaintiff is unable to raise a genuine issue that defendants had "access" to his work or "appropriated" his copyright-protected expression. *See*, *e.g.*, *Loomis v. Cornish*, 836 F.3d 991 (9th Cir 2016) (summary judgment affirmed for defendants in copyright infringement action based on defendants' lack of access); *Benay v. Warner Bros. Entm't, Inc*., 607 F.3d 620, 624 (9th

---

[43] The definition of "Kuiper Belt" is "a band of small celestial bodies beyond the orbit of Neptune from which many short-period comets are believed to originate." *See Kuiper Belt*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/Kuiper%20Belt (last visited March 9, 2023); *see also* Declaration of Bob Gale ("Gale Dec."), ¶ 140.

1  Cir. 2010) (summary judgment for defendants affirmed based on lack of substantial
2  similarity in protected expression), *overruled in part on other grounds by Skidmore as*
3  *Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (*en banc*).

### B.    Fundamentals of a Copyright Infringement Claim

5          To establish a prima facie case of direct copyright infringement, Plaintiff must
6  prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of
7  the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340,
8  361 (1991).  For purposes of this Motion, the Writer Defendants assume that Plaintiff
9  owns a valid copyright in COSMIC FORCE (prong (1) above) in the sense that the
10 copyright in the work has been registered in the U.S. Copyright Office and is owned by
11 Plaintiff.  4 M. & D. Nimmer, *Nimmer on Copyright* ("*Nimmer*"), § 13.01[A] at 13-6 to
12 -7.  In addition, however, "[t]he second prong of the infringement analysis contains two
13 separate components: 'copying' and 'unlawful appropriation,'" which Plaintiff cannot
14 satisfy here. *Skidmore*, 952 F.3d at 1064; 4 *Nimmer*, § 13.01[B] at 13-8 to -9.

15         Proof of copying is essential "[b]ecause independent creation is a complete
16 defense to copyright infringement…." *Skidmore*, 952 F.3d at 1064.  The element of
17 copying focuses on "the factual question whether the defendant, in creating its work,
18 used the plaintiffs' material as a model, template, or even inspiration."  4 *Nimmer*, §
19 13.01[B] at 13-8.  "In the absence of direct evidence of copying, … the plaintiff 'can
20 attempt to prove it circumstantially by showing that the defendant had access to the
21 plaintiff's work and that the two works share similarities probative of copying.'"
22 *Skidmore*, 952 F.3d at 1064.  If such copying did not occur, then there can be no
23 infringement, even if the works in question are literally identical. *Granite Music Corp.*
24 *v. United Artists Corp*., 532 F.2d 718, 720 (9th Cir. 1976); *Selle v. Gibb*, 741 F.2d 896
25 (7th Cir. 1984); *see also Feist*, 499 U.S. at 345-46.

26         The issue of unlawful appropriation in actions involving literary and motion
27 picture works is evaluated under a two-part analysis – the extrinsic test and an intrinsic
28 test.  *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003).  Because both tests

must be satisfied, "a plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment." *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994).  The "extrinsic test" considers the plots, themes, dialogue, mood, setting, pace, characters, and sequence of events of each work at issue after first "filtering out" unprotected elements, including stock elements and scenes-à-faire. *Funky Films, Inc. v. Time Warner Ent't Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006); *Cavalier v. Random House, Inc.*, 297 F.3d 815, 826 (9th Cir. 2002); *Shame on You Prods. v. Banks*, 120 F. Supp. 3d 1123, 1148 (C.D. Cal. 2015).  The extrinsic test can be satisfied only by similarities in "the actual concrete elements that make up the total sequence of events and relationships between the major characters" since "[n]o one can own the basic idea for a story." *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985).  Thus, the extrinsic test is not satisfied by lists of random similarities that are cherry-picked at a high level of abstraction (*Litchfield v. Spielberg,* 736 F.2d 1352, 1356 (9th Cir. 1984)) or if "an actual reading of the two works reveals greater, more significant differences and few real similarities…." *Funky Films*, 462 F.3d at 1078.

The court must also filter out any elements created by the defendant before he or she had access to the plaintiff's work because "a prior-created work cannot infringe a later-created one." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1128 (9th Cir. 2002); *see also Murray Hill Pubs. v. Twentieth Century Fox*, 361 F.3d 312, 326 (6th Cir. 2004) ("where an element occurs both in the defendant's prior work and the plaintiff's prior work, no inference of copying can be drawn" since it would make no sense for a defendant "to copy wrongfully from another what he could legally copy from himself."); *Benjamin v. Walt Disney Co.*, No. CV 05-2280GPS, 2007 WL 1655783 *4 (C.D. Cal. June 5, 2007) (granting MSJ after ruling "the Court must filter out all material created [by defendants] prior to the beginning of the *Sweet Home* project at Disney.").

In addition to suing for copyright infringement (FAC, Count 1), Plaintiff has also pleaded the secondary liability theories of contributory infringement (FAC, Count 2) and vicarious infringement (FAC, Count 3).  Contributory infringement requires that

the defendant must knowingly induce, cause or materially contribute to the infringing conduct of another. *A & M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1019-20 (9th Cir. 2001). Vicarious infringement occurs when a defendant has the right and ability to supervise the infringing activity of another and also has a direct financial interest in the infringement. *Id*. at 2022-23. But contributory and vicarious infringement "do[] not exist in the absence of direct infringement by a third party." *Id*., 1013 fn. 2; *see also Religious Tech. Ctr. v. Netcom On-Line Comm. Servs., In*c., 907 F. Supp. 1361, 1371 (N.D. Cal. 1995). Thus, as Plaintiff's evidence fails to raise genuine issues for trial as to copyright infringement, his secondary liability theories fail too.[44]

## IV.   SUMMARY JUDGMENT MUST BE ENTERED FOR THE WRITER DEFENDANTS ON PLAINTIFF'S COPYRIGHT CLAIMS

### A.   Plaintiff Cannot Raise a Genuine Issue as to "Access"

As noted above, "[a] plaintiff must show 'copying' of a protected work to prove copyright infringement." *Unicolors, Inc. v. Urban Outfitters, Inc*., 853 F.3d 980, 984 (9th Cir. 2017). If there is no direct evidence of copying (as in this case), the plaintiff must attempt to prove this element by circumstantial evidence of access plus probative similarities. *Rentmeester v. Nike, Inc*., 883 F. 3d 1111, 1117 (9th Cir. 2018). Here, to raise a genuine issue as to "access," Plaintiff must present evidence – not mere speculation or conjecture – that the writers of AD ASTRA (*i.e.*, defendants Gray and Gross) had a "reasonable" opportunity to view and copy COSMIC FORCE before creating AD ASTRA. *Loomis*, 836 F.3d at 995; 4 *Nimmer*, § 13.02[A] at 13-21 ("Access may not be inferred through mere speculation or conjecture."). Also, such access must exist "**prior** to the creation of defendant's work." *Unicolors*, 853 F.3d at 984 (emphasis added); *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1054 (C.D. Cal. 2010); *Lucky Break Wishbone Corp. v. Sears, Roebuck & Co*., 528 F. Supp. 2d 1106, 1122 W.D. Wash. 2007). This is because "a prior-created work

---

[44] *See also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 930 (2005); *Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146, 1173 (9th Cir. 2007).

cannot infringe a later-created one." *Christian*, 286 F.3d at 1128.

"Circumstantial evidence of reasonable access is proven in one of two ways: (1) a particular chain of events is established between the plaintiff's work and the defendant's access to that work …, or (2) the plaintiff's work has been widely disseminated." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000). Here, Plaintiff relies on a "chain of events" theory.  But claims of access based on a chain of events theory require far more than "bare corporate receipt." *Loomis*, 836 F.3d at 995; *Meta-Film*, 586 F. Supp. at 1358.  Instead, there must be a "nexus between the defendant and the individual possessing knowledge of the plaintiff's work" or an "intermediary." *Tedesco v. Pepe*, No. CV 11-6203-JFW(JCx), 2012 WL 13012419, at *11 (C.D. Cal. July 17, 2012) (quoting *Meta-Film Assocs., Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1355 (C.D. Cal 1984)).  Under this "nexus" requirement, "'[t]he dealings between the plaintiff and the intermediary and between the intermediary and the alleged copier must involve some overlap in subject matter to permit an inference of access.'" *Loomis*, 836 F.3d at 995 (quoting *Meta-Film*, 586 F. Supp. at 1358).

Here, Plaintiff has asserted three purported "chains of events" that supposedly constitute routes of access by which COSMIC FORCE allegedly reached Gray and Gross – (1) a November 2015 submission of COSMIC FORCE by Plaintiff to then-CAA agent Cameron Mitchell; (2) a February 2016 submission of COSMIC FORCE by Plaintiff to John Davis and Mike Stein of DEC; and (3) an April 2016 submission of COSMIC FORCE by Plaintiff to Gloria Fan of Fox 21.  However, none of these submissions constitute anything more than "bare corporate receipt" under *Loomis*, *Tedesco*, and *Meta-Films*.  Specifically, Cameron Mitchell, John Davis, Mike Stein, and Gloria Fan had no "nexus" of any kind with defendants Gray and Gross or with the creation of AD ASTRA.  None of these persons "was a supervisor with responsibility for the defendant's project, was part of the same work unit as the copier, or contributed creative ideas or material to the defendant's work." *Loomis*, 836 F.3d at 995 (quoting *Meta-Film*, 586 F. Supp. at 1355-56).  Moreover, the key allegedly "infringing"

1   elements of AD ASTRA were all created well before any of these submissions occurred
2   – *i.e.*, in the initial 11/29/13 Script, the 8/27/14 Outline, and the 5/22/15 Script written
3   by Gray and Gross. Because Plaintiff's case is based on impermissibly speculative and
4   conjectural theories of access that allegedly occurred (if at all) **after** the creation of the
5   key elements of AD ASTRA, Plaintiff's access evidence is deficient as a matter of law.
6   *Unicolors*, 853 F.3d at 984; *Bernal*, 788 F. Supp. 2d at 1054.

7          **B.**    **Plaintiff Cannot Raise a Triable Issue as to Striking Similarity**

8         "Absent evidence of access, a 'striking similarity' between the works may give
9   rise to a permissible inference of copying." *Baxter v. MCA., Inc.*, 812 F.2d 421, 423
10  (9th Cir. 1987). However, "striking" similarities may give rise to an inference of access
11  only where the works are "so strikingly similar as to preclude the possibility of
12  independent creation." *Bernal*, 788 F. Supp. 2d at 1052 (quoting *Meta-Film*, 586 F.
13  Supp. at 1355). "'At base, "striking similarity" simply means that in human experience
14  it is virtually impossible that the two works could have been independently created.'"
15  *Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1103 (C.D. Cal. 2005) (quoting 4 *Nimmer*,
16  § 13.02[B]). "To show a striking similarity between works, a plaintiff must produce
17  evidence that the accused work could not possibly have been the result of independent
18  creation." *Seals-McClellan v. Dreamworks, Inc.*, 120 Fed. Appx. 3, 4 (9th Cir. 2004);
19  *see also Stabile v. Paul Smith Ltd.*, 137 F. Supp. 3d 1173 (C.D. Cal. 2015); *Briggs v.*
20  *Blomkamp*, 70 F. Supp. 3d 1155, 1166-1167 (N.D. Cal. 2014). Here, although Plaintiff
21  may claim that "striking similarities" exist between the works that obviate his need to
22  prove access, this is not a case where assertions of "striking" similarity are even
23  remotely plausible. Gale Dec., ¶¶ 160-162.

24         **C.**    **The Independent Creation of AD ASTRA Precludes Infringement**

25        It is basic that "independent creation is a complete defense to copyright
26  infringement." *Rentmeester*, 883 F.3d at 117. Thus, as noted previously, "a prior-
27  created work cannot infringe a later-created one." *Christian*, 286 F.3d at 1128 ("By
28  simple logic, it is impossible to copy something that does not exist."); *see also Murray*

1  *Hill Pubs.*, 361 F.3d at 326 ("where an element occurs both in the defendant's prior

2  work and the plaintiff's prior work, no inference of copying can be drawn" since it

3  would make no sense for a defendant "to copy wrongfully from another what he could

4  legally copy from himself").  As a result, inferential evidence of copying via proof of

5  access plus substantial similarity or with evidence of striking similarity "is not binding;

6  defendant can rebut it through contrary evidence [of independent creation]."  *Benay*,

7  607 F.3d at 630 (citing 4 *Nimmer* § 19D.07[C]); *Three Boys Music Corp.*, *supra*, 212

8  F.3d at 486.  Here, Defendant's proof of independent creation is uncontroverted, so

9  summary judgment should be granted on these grounds too.

10       For example, in *Weygand v. CBS, Inc.*, this Court granted summary judgment for

11  defendants on the grounds that they "submitted substantial, uncontroverted evidence to

12  support their contention that [they had created the screenplay for their allegedly

13  infringing TV movie] prior to plaintiff's submission of his [allegedly infringed]

14  treatment and screenplay."  *Weygand v. CBS, Inc.*, No. 96-4540-WMB, 1997 WL

15  377980 (C.D. Cal. May 21, 1997); *accord Tedesco*, 2012 WL 13012419 at *9-10

16  *Benjamin*, 2007 WL 1655783 *4.  In other words, summary judgment should be entered

17  for defendants where the "uncontradicted evidence demonstrates that the conception of

18  [defendant's work] evolved and developed in an incremental fashion that does not bear

19  any indicia of having been shaped by [plaintiff's work]."  *Silberstein v. Fox Entm't*

20  *Group, Inc.*, 424 F. Supp. 2d 616, 628-29 (S.D.N.Y. 2004) (granting MSJ).[45]

21       Here it is undisputed that the key allegedly "infringing" elements of AD ASTRA

22  had been created by Gray and Gross in the 11/29/13 Script and the 8/27/14 Outline,

23  which were written before COSMIC FORCE had been completed, and already were

24  embodied in the 5/22/15 Script before Plaintiff submitted COSMIC FORCE to CAA.

25

26

---

27  [45] *See also Stabile v. Paul Smith Ltd.*, 137 F. Supp. 3d 1173, 1191(C.D. Cal. 2015);
*Moore v. Lightstorm Entm't*, 992 F. Supp. 2d 543, 559-60 (D. Md. 2014); *Muller v.*
28  *Twentieth Century Fox Film Corp.*, 794 F. Supp. 2d 429, 443-44 (S.D.N.Y. 2011);
*Dimmie v. Carey*, 88 F. Supp. 2d 142, 150-51 (S.D.N.Y. 2000).

**D.    AD ASTRA is Not Substantially Similar to COSMIC FORCE in Protected Expression Under the Extrinsic Test**

Under the extrinsic test, the Ninth Circuit has regularly affirmed summary judgments for defendants in cases where the works at issue shared far more extensive similarities than AD ASTRA and COSMIC FORCE.  *See*, *e.g.*, *Funky Films*, 462 F.3d at 1075 & 77-81; *Kouf*, 16 F.3d at 1044-46; *Berkic*, 761 F.2d at 1293; *see also* Section III.B., *supra*.  Summary judgment is especially appropriate here because in applying the extrinsic test, it is necessary to first filter out the elements of AD ASTRA that were created prior to COSMIC FORCE because "a prior-created work cannot infringe a later-created one."  *Christian*, 286 F.3d at 1128; *see also Murray Hill*, 361 F.3d at 326; *Benjamin*, 2007 WL 1655783, *4.  In this case, no reasonable mind could find that any protectable similarities exist between AD ASTRA and COSMIC FORCE after filtering out the key elements of AD ASTRA that were created before COSMIC FORCE:

**1.    The Plots/Sequences of Events Are Not Substantially Similar**

In the 11/29/13 Script for AD ASTRA written by Gray and Gross over a full year before COSMIC FORCE was written by Plaintiff, Astronaut Roy McBride is sent on a space mission via the Moon and then Mars to the Lima Project, a research station near Saturn.  His mission is to terminate the Lima Project and its rogue director, his onetime mentor Dr. John Gates – who was the father of Roy's deceased former fiancée, Claire.  Roy arrives at the Lima Project and confronts Gates, who is conducting illegal genetic duplication research.  Roy, although dying, decides to help Gates when he realizes that Gates' work may preserve humanity.  Gates clones Roy and his dead daughter Claire and sends the clones back to Earth with his research.  To complete his mission, Roy kills Gates and reconciles to dying in space alone as his clone returns to Earth with Claire.  *See* Ex. 1; *see also* Gray Dec., ¶ 6; Gross Dec., ¶ 5; Gale Decl., ¶ 40.

In the subsequent 8/27/14 Outline for AD ASTRA, also written many months prior to COSMIC FORCE, the storyline of the 11/29/13 Script is refined.  Astronaut Roy McBride learns that devastating blackouts on Earth were caused by experiments

on the Lima Project Spacecraft near Saturn, which had been commanded by his father who was presumed dead. The Lima Project's mission had been to search for extra-terrestrial life. Roy, shocked to learn his father is alive, is sent on a mission via the Moon and then Mars to destroy the Lima Project. Roy ultimately confronts his father who tells him there is no evidence of other life in the Universe, but that Earth itself is at risk of destruction. Roy kills his father to put him out of his misery but ensures that his father's critical research is sent back to Earth. *See* Ex. 2; *see also* Gray Dec., ¶ 8; Gross Dec., ¶ 7; Gale Dec., ¶ 41. This same story is told in even greater detail in the 5/22/15 Script, except the Lima Project has been relocated to Neptune instead of Saturn. *See* Ex. 5; *see also* Gray Dec., ¶ 10; Gross Dec., ¶ 9; Gale Dec., ¶ 42.

The film AD ASTRA (Ex. 14) tells the same basic story as the 11/29/13 Script as modified by the 8/27/14 Outline and the 5/22/15 Script with relatively minor changes. *See* Section II.B.1., *supra*. In contrast, the plot and sequence of events of COSMIC FORCE are highly divergent from AD ASTRA (*see* Section II.B.2., *supra*), thus precluding a finding that the works are substantially similar. Moreover, because the 11/29/13 Script and the 8/27/14 Outline for AD ASTRA were written before COSMIC FORCE (and the 5/22/15 Script was written before Plaintiff's claimed November 2015 "pitch" of his work to Mitchell at CAA), Plaintiff's allegations of substantial similarity cannot be based on the facts that both AD ASTRA and COSMIC FORCE involve astronauts who embark on dangerous journeys across the solar system to confront and kill their own fathers, who had led earlier unsuccessful space missions in which they were presumed to have perished. Once those similarities are filtered out of the analysis, no remaining elements of the works' plots and sequences of events are "similar" at all except for stock elements and routine scenes-à-faire that can be found in virtually any sci-fi adventure – *e.g.*, spaceships and futuristic weapons – which are unprotected elements and must be filtered out of the analysis. *See* Exs. 1-5; Gale Dec., ¶¶ 63-81.

## 2.     The Characters Are Not Substantially Similar

Characters must be "especially distinctive" and contain "unique elements of expression" to be protected.  *DC Comics v. Towle*, 802 F.3d 1012, 1021 (9th Cir. 2015). This is because "only distinctive characters are protectible, not characters that merely embody unprotected ideas."  *Benay*, 607 F.3d at 626; *Bernal*, 788 F. Supp. 2d at 1069 ("[g]eneralized character types are not protected by copyright law.").   Moreover, "courts require a very high degree of similarity between characters" to support a finding of infringement.  *Silas*, 201 F. Supp. 3d at 1177.

### a.     The Protagonists are Not Substantially Similar

Roy in AD ASTRA and Logan in COSMIC FORCE are completely dissimilar at the level of concrete copyright-protected expression.   Roy in AD ASTRA is an exceptionally introspective and reserved man in his 40s, capable of controlling his suppressed emotions in the face of extreme danger.  However, as Roy learns more about the Lima Project and grows increasingly isolated, he begins to unravel.  Eventually, after Roy faces his father and learns that humans are alone in the universe, he resolves to be different from his dad and to embrace his life on Earth with those who love him.

Conversely, Logan in COSMIC FORCE is a stereotypical action-adventure hero, a hot-tempered, extroverted athlete with a troubled past who loves combat.  As a teenager, Logan struggled with his father's disappearance – acting out and failing to meet his mother's expectations.  Now, at 28, he is less rebellious but has a difficult time controlling his emotions, even engaging in a fistfight with Melk.  Although Logan expresses sadness after he destroys the Polaris – thereby killing his own father (unlike Roy, who tried to save his father) – he remains mostly unchanged throughout the story.

Although at a high level of generality both Logan and Roy are space commanders seeking to find fathers who are lost and presumed dead, such generalized similarities in character "types" are not protected.  *See*, *e.g.*, *Benay*, 607 F.3d at 626.  In addition, because these key expressive elements of Roy were embodied in the 11/29/13 Script, the 8/27/14 Outline and the 5/22/15 Script, these ostensible similarities must be "filtered

out" of the substantial similarity analysis and cannot raise genuine issues.  *Murray Hill*, 361 F.3d at 326; *Benjamin*, 2007 WL 1655783 at *4; *see also* Gale Dec., ¶¶ 86 – 102.

### b.   The Fathers Are Not Substantially Similar

Although Decker and Clifford are both fathers who serve as plot devices to propel the protagonists on their respective journeys and are both revealed to be fallen heroes marooned in far corners of the solar system, their expressive elements are highly divergent.  In AD ASTRA, Clifford is a solitary man who abandoned his wife and child in a misguided and unsuccessful search for extraterrestrial life.  Ironically, Clifford ignored the most important lives in the universe – *i.e.*, his own family – in search of this illusory goal.  In contrast, Decker in COSMIC FORCE is a victim, not a villain.  He loved his wife and son so much that he destroys himself and his crew to save them.  In addition, because the key characteristics of Clifford were embodied in the 8/27/14 Outline that predates COSMIC FORCE, these ostensibly "similar" aspects of Clifford in AD ASTRA must be "filtered out" of the substantial similarity analysis.  *Murray Hill*, 361 F.3d at 326; *Benjamin*, 2007 WL 1655783 at *4; Gale Dec., ¶¶ 103 – 110.

### c.   The Love Interests Are Not Substantially Similar

While both love interests are named after the biblical first woman, Eve, a name that is not original or protectable (*see* Genesis 2:4-3:24 (King James)), in AD ASTRA the character Eve plays a very minor role, and represents the ways in which Roy has cut himself off emotionally, like his father Clifford.  Roy and Eve remain separated in AD ASTRA until the final scene – and Eve scarcely utters a word except in old recordings that Roy replays in the loneliness of space.  In contrast, Eve in COSMIC FORCE plays a key role in the story by acting as executive director of De Facto and providing key story exposition.  The common name "Eve" for these otherwise divergent characters is insufficient to establish substantial similarity.  *See, e.g.*, *Shaw v. Lindheim*, 809 F. Supp. 1393 (C.D. Cal. 1992) (granting directed verdict for defendants even though the characters in both works were known as "the Equalizer"); *Silas*, 201 F. Supp. 3d at 1179 (granting motion to dismiss although both works featured character known as "Ann");

1   *Marcus v. ABC Signature Studios, Inc*., 279 F. Supp. 3d 1056, 1068-69 (C.D. Cal. 2017)

2   (granting motion to dismiss although both works have characters with the last name

3   "Johnson" and feature sons known as "Junior"); *see also* Gale Dec., ¶¶ 111 – 117.

### d.   The Other Characters Are Not Substantially Similar

5   The works also have numerous characters with no analogues to each other.  For

6   example, there are no aliens in AD ASTRA (in fact, it is a key element of AD ASTRA

7   that they do not even exist); in contrast, the alien "Von" and the extraterrestrial owners

8   of the Darklight play significant roles in COSMIC FORCE.  Likewise, there are no

9   virtual-humanoid entities in AD ASTRA, whereas such creatures play a substantial role

10   in COSMIC FORCE.  Moreover, to the very limited extent that generalized traits are

11   shared by any of the characters, they are not protectable by copyright.  *See, e.g., Olson*,

12   855 F.2d at 1451-53; *Bernal*, 788 F. Supp. 2d at 1069; *see also* Gale Dec., ¶¶ 118 – 126.

### 3.   The Settings of the Works Are Not Substantially Similar

14   The settings of AD ASTRA and COSMIC FORCE are not substantially similar.

15   AD ASTRA is set briefly on Earth, after which Roy travels to the Moon, then to Mars,

16   and then outside the rings of Neptune – with prolonged sequences on spacecraft.  In

17   contrast, COSMIC FORCE has fewer scenes in space and mostly takes place on Earth,

18   including inside the White House and at the ProtoZone stadium.  Moreover, as most of

19   the settings of AD ASTRA are contained in the 11/29/13 Script and the 8/27/14 Outline

20   that predate COSMIC FORCE, these ostensibly "similar" aspects of AD ASTRA must

21   be "filtered out" of the substantial similarity analysis.  *Murray Hill*, 361 F.3d at 326;

22   *Benjamin*, 2007 WL 1655783 at *4.  Further, settings that typically arise from works

23   involving spacecraft crossing the solar system are unprotected scenes-à-faire that must

24   also be "filtered out."  *Wavelength Film Co. v. Columbia Pictures Indus., Inc*., 631 F.

25   Supp. 305, 307 (N.D. Ill. 1986); *see also* Gale Dec., ¶¶ 127 – 141.

### 4.   The Themes of the Works Are Not Substantially Similar

27   The themes of AD ASTRA and COSMIC FORCE are entirely different.  While

28   both stories involve men who are forced to confront their fathers, the theme of AD

---

ASTRA concerns the emptiness of humanity's quest for external goals and the importance of learning to find inner peace and fulfillment with loved ones. In contrast, in COSMIC FORCE, the theme centers on the battle between "good versus evil, which is a nearly universal idea in literary works and film, and therefore not protected by copyright." *Basile v. Warner Bros. Entm't*, No. CV155243DMGMRWX, 2016 WL 5867432, at *12 (C.D. Cal. Jan. 4, 2016), *aff'd* 678 F. App'x 604 (9th Cir. 2017). In any event, such themes that arise "from the basic plot idea" of COSMIC FORCE, are unprotectable. *See Marcus*, 279 F. Supp. 3d at 1068; *see also* Gale Dec., ¶¶ 142 – 147.

### 5. The Moods of the Works Are Not Substantially Similar

The moods of AD ASTRA and COSMIC FORCE are entirely divergent. In AD ASTRA, Roy's journey is quiet, melancholy and introspective. In contrast, the mood of COSMIC FORCE is action-packed and cartoonish, replete with deep state plots, laser guns, war games, virtual-reality replicants, aliens, and futuristic technologies. Moreover, purported similarities in mood arising from the fact that both works are broadly in the science fiction genre are insufficient to satisfy the extrinsic test. *Zella*, 529 F. Supp. 2d at 1136; *Olson*, 855 F.2d at 1451; *see also* Gale Dec., ¶¶ 148 – 151.

### 6. The Dialogue in the Works is Not Substantially Similar

To establish a claim of substantial similarity based on dialogue, a plaintiff must establish "extended similarity of dialogue." *Olson*, 855 F.2d at 1450. This is because copyright protection does not subsist in ordinary words, short phrases, or "phrases or expressions conveying an idea typically expressed in a limited number of stereotyped fashions." *Narell v. Freeman*, 872 F.2d 907, 911-12 (9th Cir. 1989). Here, there is no "extended similarity of dialogue" between AD ASTRA and COSMIC FORCE. *See* Gale Dec., ¶¶ 152 – 153.

### 7. The Pace of the Works is Not Substantially Similar

The pace of the AD ASTRA is slow and contemplative, taking detours to explore Roy's thoughts and emotions. For example, Roy's journey to Neptune requires 79 days of solitude, which viewers experience in a pensive drawn-out montage. In contrast,

1    COSMIC FORCE is a fast-paced action and adventure story – as exemplified by the

2    fact that Logan's space voyage to the Kuiper Belt requires only a single day.

3    Additionally, purported similarities of pace that are common to a genre are insufficient

4    to satisfy the extrinsic test.  *Olson*, 855 F.2d at 1451; *see also* Gale Dec., ¶¶ 154 – 155.

5         **8.    The AD ASTRA Screenplay and Trailers are Not Substantially**

6         **Similar to COSMIC FORCE**

7    Moreover, Plaintiff's copyright infringement claims are not supported by his

8    claims against the screenplay and trailers for AD ASTRA.  *See* Dkt. No. 126, ¶¶ 50,

9    52F.  To start with, no viable infringement claim is stated against the screenplay for AD

10   ASTRA because "courts consider the final version of a film, rather than unpublished

11   scripts, when determining substantial similarity."  *Silas*, 201 F. Supp. 3d at 1168-69;

12   *Meta-Film*, 586 F. Supp. at 1360 (citing *Miller v. Universal City Studios, Inc.*, 650 F.2d

13   1365, 1375 (5th Cir. 1981) ("the 'ultimate test of infringement [is] the film as broadcast'

14   rather than the underlying scripts.")).  Also, as the AD ASTRA screenplay contains

15   substantially the same elements as the film, it is non-infringing for precisely the same

16   reasons – which are discussed in detail above.[46]  As for the promotional tailers for AD

17   ASTRA, they are likewise non-infringing as a matter of law because they are comprised

18   of short snippets of scenes shot for the Film, and thus are likewise non-infringing for

19   the same reasons discussed above – including as to the plots, sequences of events,

20   characters, themes, moods, settings, dialogue and pace of the trailers. *See Fulks v.*

21   *Knowles-Carter*, 207 F. Supp. 3d 274, 292-93 (S.D.N.Y. 2016); Gale Dec., ¶ 158.

22        **9.    Summary of Extrinsic Test Factors**

23   In sum, the "extrinsic test" factors that determine substantial similarity reveal that

24   AD ASTRA – including not just the film AD ASTRA, but also its screenplay and

25   trailers – and COSMIC FORCE are not substantially similar as a matter of law.  The

28   [46] *See* Gale Dec., ¶¶ 156 – 157.

plots, sequences of events, characters, themes, moods, settings, dialogue and pace of the works are divergent and tell stories that are not substantially similar.

## V.   **CONCLUSION**

For the reasons stated above, this Motion should be granted and the Fourth Amended Complaint should be dismissed in its entirety with prejudice as to the Writer Defendants – Gray, Gross and RTF.

Dated:  May 31, 2023

RESPECTFULLY SUBMITTED,

**FOX ROTHSCHILD LLP**

*/S/ DAVID ARONOFF*
David Aronoff
Joshua Bornstein
Attorneys for Defendants
TWENTIETH CENTURY FOX FILM
CORPORATION, THE WALT DISNEY
COMPANY, 20TH CENTURY
STUDIOS, INC., RT FEATURES U.S.,
LLC, JAMES GRAY,
and ETHAN GROSS