1 | DAVID ARONOFF (SBN 125694)
2 |   DAronoff@FoxRothschild.com
  | JOSHUA BORNSTEIN (SBN 311658)
3 |   JBornstein@FoxRothschild.com
  | FOX ROTHSCHILD LLP
4 | Constellation Place
  | 10250 Constellation Blvd, Suite 900
5 | Los Angeles, CA 90067
  | Telephone:  310.598.4150
6 | Facsimile:   310.556.9828

7 | Attorneys for Defendants TWENTIETH
  | CENTURY FOX FILM CORPORATION, THE
8 | WALT DISNEY COMPANY, 20TH CENTURY
  | STUDIOS, INC., RT FEATURES U.S., LLC,
9 | JAMES GRAY, and ETHAN GROSS

10 |                UNITED STATES DISTRICT COURT

11 |                CENTRAL DISTRICT OF CALIFORNIA

12 |

| | |
|---|---|
| 13 | PHILLIP MADISON JONES, | Case No. 2:21-CV-05890-FWS (SKx) |
| 14 |      Plaintiff, | Hon. Fred W. Slaughter |
| 15 |      v. | **1.  NOTICE OF MOTION AND MOTION FOR SUMMARY** |
| 16 | TWENTIETH CENTURY FOX FILM | **JUDGMENT, OR, IN THE** |
| 17 | CORPORATION d/b/a 20TH CENTURY | **ALTERNATIVE, PARTIAL** |
|    | STUDIOS; THE WALT DISNEY | **SUMMARY JUDGMENT, OF** |
|    | COMPANY; 20TH CENTURY | **DEFENDANTS THE WALT** |
| 18 | STUDIOS, INC.; CREATIVE ARTISTS | **DISNEY COMPANY, TWENTIETH** |
|    | AGENCY, LLC; RT FEATURES; RT | **CENTURY FOX FILM** |
| 19 | FEATURES U.S. LLC, JAMES GRAY, | **CORPORATION, AND 20TH** |
|    | AND ETHAN GROSS, | **CENTURY STUDIOS, INC. ON** |
| 20 |      Defendants. | **COUNT 4 OF FOURTH AMENDED** |
|    |  | **COMPLAINT UNDER FED. R. CIV.** |
| 21 |  | **P. RULE 56; MEMORANDUM OF** |
|    |  | **POINTS AND AUTHORITIES** |
| 22 |  |  |
| 23 |  | **2.  NOTICE OF JOINDER AND** |
|    |  | **JOINDER IN MOTION FOR** |
| 24 |  | **SUMMARY JUDGMENT, OR, IN** |
|    |  | **THE ALTERNATIVE, PARTIAL** |
| 25 |  | **SUMMARY JUDGMENT, OF** |
|    |  | **DEFENDANTS JAMES GRAY,** |
| 26 |  | **ETHAN GROSS AND RT** |
|    |  | **FEATURES U.S., LLC ON COUNTS** |
| 27 |  | **ONE THROUGH THREE OF** |
|    |  | **FOURTH AMENDED COMPLAINT** |
| 28 |  |  |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS AND CONCLUSIONS OF LAW; DECLARATION OF JAMES GRAY; DECLARATION OF ETHAN GROSS; DECLARATION OF RODRIGO TEIXEIRA; DECLARATION OF GLORIA FAN; DECLARATION OF SCOTT AVERSANO; DECLARATION OF MIKE STEIN; DECLARATION OF YARIV MILCHAN; DECLARATION OF JOHN DAVIS; DECLARATION OF BOB GALE; DECLARATION OF DAVID ARONOFF; NOTICE OF LODGING; AND [PROPOSED] ORDER FILED CONCURRENTLY]

Date:          July 13, 2023
Time:          10:00 AM
Courtroom:      10D

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 13, 2023, at 10:00 a.m., or as soon thereafter as the parties may be heard, or at such other date and time set by the Court, before the Hon. Fred W. Slaughter, United States District Court Judge, in Courtroom 10D of the Ronald Reagan Federal Building and United States Courthouse, located at 411 West 4th Street, Santa Ana, CA 92701-4516, defendants The Walt Disney Company ("TWDC"), Twentieth Century Fox Film Corporation ("TCFFC"), and 20th Century Studios, Inc. ("20th Century") (collectively, "the Distributor Defendants") will and hereby do move under Fed. R. Civ. P. Rule 56 for the entry of summary judgment or, in the alternative, partial summary judgment, dismissing Count Four of the Fourth Amended Complaint ("FAC") (Dkt. No. 126) of Plaintiff Phillip Madison Jones ("Plaintiff") on the grounds that the evidence does not raise genuine issues for trial on Plaintiff's said claim against the Distributor Defendants (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that on the same date, time and place specified above the Distributor Defendants will and do hereby join in the concurrently-filed Motion for Summary Judgment under Fed. R. Civ. P. Rule 56 of defendants James Gray ("Gray"), Ethan Gross ("Gross"), and RT Features U.S., LLC ("RTF") ("the Writer Defendants") on the First through Third Counts of the FAC on the grounds that these claims as alleged against the Distributor Defendants are also unsupported by substantial evidence for the same reasons urged by the Writer Defendants. Dkt. No. 150.

**PLEASE TAKE FURTHER NOTICE** of Plaintiff's refusal to meet and confer with the Distributor Defendants regarding this Motion. Spanning the course of several weeks, multiple attempts have been made by counsel for the Distributor Defendants to meet and confer with Plaintiff's counsel concerning this Motion pursuant to Local Rule 7-3. *See* Declaration of David Aronoff, ¶¶ 6-21. Plaintiff's counsel, however, have refused to conduct a Local Rule 7-3 conference of counsel to address the issues raised by this Motion. *Id.* Because Plaintiff's counsel refused to meet and confer in violation

1    of their duties under Local Rule 7-3, the Distributor Defendants had no recourse but to

2    file their Motion without certifying compliance with said Local Rule. *Id*., ¶ 21.

3           This Motion and Joinder is based upon this Notice and the attached Memorandum

4    of Points and Authorities, the concurrently-submitted declarations of James Gray, Ethan

5    Gross, Rodrigo Teixeira, Yariv Milchan, Scott Aversano, Gloria Fan, John Davis, Mike

6    Stein, Bob Gale, and David Aronoff, Exhibits 1-23, the Notice of Lodging of Exhibits

7    14 and 15, the Separate Statement of Undisputed Material Facts and Conclusions of

8    Law, the [Proposed] Order, all of the pleadings, papers and other materials on file in

9    this action, and such argument, evidence and additional matters that may be presented

10   at or before the hearing on this Motion.

11   Dated:  June 1, 2023                          **FOX ROTHSCHILD LLP**

12

13                                                 */S/ DAVID ARONOFF*
                                                   _____
14                                                 David Aronoff
                                                   Joshua Bornstein
15                                                 Attorneys for Defendants
                                                   TWENTIETH CENTURY FOX FILM
16                                                 CORPORATION, THE WALT DISNEY
                                                   COMPANY, 20TH CENTURY
17                                                 STUDIOS, INC., RT FEATURES U.S.,
                                                   LLC, JAMES GRAY, and ETHAN
18                                                 GROSS

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................. 1

II. RELEVANT BACKGROUND ............................................................ 2

    A. The Alleged Implied Contracts with the Distributor Defendants ............. 2

        1. The Purported Contract with Davis Entertainment ........................ 3

        2. The Purported Contract with Fox 21 .............................................. 4

    B. The Distributor Defendants' Limited Creative Involvement in the Development of AD ASTRA ................................................................... 5

III. OVERVIEW OF APPLICABLE LEGAL PRINCIPLES ................... 8

    A. The Legal Standard for Summary Judgment Under Rule 56 ................... 8

    B. Fundamentals of an Idea Submission Claim ........................................... 8

IV. SUMMARY JUDGMENT MUST BE ENTERED IN FAVOR OF THE DISTRIBUTOR DEFENDANTS ON THE FOURTH COUNT ...................... 10

    A. Plaintiff Had No Implied Contract with Any Distributor Defendant ...... 10

        1. The Submission to DEC Created No Enforceable Contract .......... 11

        2. The Submission to Fan Created No Enforceable Contract ........... 12

    B. Plaintiff Cannot Prove "Use" of COSMIC FORCE By Any of The Distributor Defendants in Connection with AD ASTRA ...................... 13

        1. Plaintiff Cannot Raise a Genuine Issue as to Access ................... 13

        2. There Exists No Genuine Issue as to Substantial Similarity ........ 15

        3. Independent Creation Negates Any Inference of "Use" ............... 17

    C. Plaintiff's Breach of Implied Contract Claim Against TCFFC and TWDC is Time Barred ............................................................................ 18

V. CONCLUSION .................................................................................... 19

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

4

5

*A Slice of Pie Prods., LLC v. Wayans Bros. Entm't,*
  487 F. Supp. 2d 41 (D. Conn. 2007)............................................................15, 16

6

*Benay v. Warner Bros. Entm't, Inc.,*
  607 F.3d 620 (9th Cir. 2010) ........................................................................*passim*

7

8

*Benjamin v. Walt Disney Co.,*
  No. CV 05-2280GPS, 2007 WL 1655783 (C.D. Cal. June 5, 2007)..................15

9

10

*Bergman v. Electrolux Corp.,*
  558 F. Supp. 1351 (D. Nev. 1983)....................................................................15

11

12

*Bernal v. Paradigm Talent & Literary Agency,*
  788 F. Supp. 2d 1043 (C.D. Cal. 2010) ..............................................................14

13

14

*Brink v. First Credit Res.,*
  57 F. Supp. 2d 848 (D. Ariz. 1999) ....................................................................19

15

16

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986).............................................................................................8

17

18

*City of Los Angeles v. Bank of Am. Corp.,*
  No. CV 13-9046 PA, 2015 WL 4880511 (C.D. Cal. May 11, 2015)..................4

19

20

*Design Data Corp. v. Unigate Enter., Inc.,*
  No. C 12-4131 PJH, 2013 WL 360542 (N.D. Cal. Jan. 29, 2013) ....................10

21

22

*Hoff v. Walt Disney Pictures,*
  No. EDCV1900665AGKKX, 2019 WL 6329368
  (C.D. Cal. Aug. 19, 2019)...................................................................................18

23

24

*Kilkenny v. Arco Marine Inc.,*
  800 F.2d 853 (9th Cir. 1986) ..............................................................................19

25

26

*MV Transp., Inc. v. Omne Staff Leasing, Inc.,*
  378 F. Supp. 2d 1200 (E.D. Cal. 2005) ..............................................................11

27

28

*Trishan Air, Inc. v. Fed. Ins. Co.,*
  635 F.3d 422 (9th Cir. 2011) ..............................................................................4

*Wasco Prod., Inc. v. Southwall Techs., Inc.*,
   435 F.3d 989 (9th Cir. 2006) ..................................................................4

**State Cases**

*Chandler v. Roach*,
   156 Cal. App. 2d 435 (1957) .............................................................10

*Clemens v. Amer. Warr. Corp.*,
   193 Cal. App. 3d 444 (1987) .............................................................12

*Cohen v. TNP 2008 Participating Notes Program, LLC*,
   31 Cal. App. 5th 840 (2019) .............................................................12

*Desny v. Wilder*,
   46 Cal. 2d 715 (1956) .......................................................................10

*Faris v. Enberg*,
   97 Cal. App. 3d 309 (1979) ...........................................................9, 10

*Gunther-Wahl Prod's, Inc. v. Mattel, Inc.*,
   104 Cal. App. 4th 27 (2002) .............................................................17

*Henried v. Four Star Television*,
   266 Cal. App. 2d 435 (1968) .............................................................15

*Hollywood Screentest of Am. Inc. v. NBC Universal*,
   151 Cal. App. 4th 631 (2007) ........................................................9, 17

*Klekas v. EMI Films, Inc.*,
   150 Cal. App. 3d 1102 (1984) .......................................................9, 15

*Mann v. Columbia Pictures, Inc.*,
   128 Cal. App. 3d 628 (1982) ....................................................9, 10, 17

*Rokos v. Peck*,
   182 Cal. App. 3d 604 (1986) .............................................................10

*Ryder v. Lightstorm Entm't, Inc.*,
   246 Cal. App. 4th 1064 (2016) ...................................................*passim*

*Spinner v. Am. Broad. Cos., Inc.*,
   215 Cal. App. 4th 172 (2013) ...........................................8, 9, 13, 17

*Sutton v. Walt Disney Productions*,
  118 Cal. App. 2d 598 (1953) ...............................................................15

*Teich v. General Mills, Inc.*,
  170 Cal. App. 2d 791 (1959) ...............................................................17

**Other Authorities**

Cal. Civ. Code §§ 2300, *et seq*................................................................11

Cal. Civ. Proc. Code § 339 .....................................................................18

Fed. R. Civ. P. 56 ..........................................................................*passim*

Fed. R. Civ. P. 15(c)...............................................................................19

Lydia & Joan Wilen, HOW TO SELL YOUR SCREENPLAY: A REALISTIC
  GUIDE TO GETTING A TELEVISION OR FILM DEAL (Square One
  2001). ....................................................................................................4

MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS TWDC, TCFFC AND 20TH CENTURY

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

This Motion is brought by defendants The Walt Disney Company ("TWDC"), Twentieth Century Fox Film Corporation ("TCFFC"), and 20th Century Studios, Inc. ("20th Century") ("the Distributor Defendants") under Fed. R. Civ. P. Rule 56 for summary judgment on the Fourth Count of Plaintiff's Fourth Amended Complaint ("FAC") (Dkt. No. 126) on the grounds that the evidence fails to raise genuine issues for trial. Additionally, the Distributor Defendants hereby join in the concurrently-filed Motion for Summary Judgment of defendants James Gray ("Gray"), Ethan Gross ("Gross"), and RT Features U.S., LLC ("RTF") ("the Writer Defendants") on the First through Third Counts of the FAC ("the Writer Defendants' Motion") on the grounds that said claims as alleged against the Distributor Defendants are unsupported by substantial evidence for the same reasons urged by the Writer Defendants. Dkt. No. 150.

This lawsuit is predicated on Plaintiff's baseless and conjectural allegations that the film AD ASTRA (sometimes, "the Film") written by screenwriters Gray and Gross and developed by the production company RTF, supposedly infringes Plaintiff's copyright and breaches purported implied contracts for the use of his ideas in his unproduced screenplay COSMIC FORCE (sometimes "Plaintiff's Work").  But the two works at issue are not substantially similar in ideas or expression.  AD ASTRA tells a deeply introspective and moody story that centers on the somber inner voyage of astronaut Major Roy McBride as he learns that "we're all we've got" in the universe because his distant father is uncaring and extraterrestrial life does not exist.  In contrast, COSMIC FORCE is a rowdy action-adventure shoot-em-up with athletic heroes and shape-shifting aliens. The Distributor Defendants never entered into any implied contract nor had any communications with Plaintiff regarding COSMIC FORCE and had virtually no involvement in the writing or development of AD ASTRA.  It was only after the script for AD ASTRA was almost finished by the Writer Defendants that

TCFFC became the distributor of the Film, and the Distributor Defendants never knew of COSMIC FORCE or used Plaintiff's ideas in the Film.

The Fourth Count of the FAC alleges a California state law breach of implied contract/idea submission claim against the Distributor Defendants (but not the Writer Defendants[1]), based on their purported use in AD ASTRA of ideas from COSMIC FORCE that the Distributor Defendants allegedly used in breach of a purported implied contract with Plaintiff.  But this claim fails to raise genuine issues for trial because AD ASTRA was created independently and largely **before** COSMIC FORCE and there is no evidence that:  (1) Plaintiff entered into any implied contract with TWDC, TCFFC or 20th Century regarding COSMIC FORCE; (2) the Distributor Defendants had access to COSMIC FORCE in the creation of AD ASTRA; or (3) the ideas contained in AD ASTRA are substantially similar to the ideas embodied in COSMIC FORCE after "filtering out" the pre-existing elements of AD ASTRA.  Additionally, the Fourth Count is time-barred under California's two-year statute of limitations and does not relate back to the filing of the original complaint because Plaintiff was not ignorant of the identities of TCFFC and TWDC at the time he initiated this lawsuit.

## II.    **RELEVANT BACKGROUND**

### A.    **The Alleged Implied Contracts with the Distributor Defendants**

Plaintiff does not assert that he entered into any contracts pertaining to COSMIC FORCE with any of the Distributor Defendants directly. Dkt. No. 126, ¶¶ 78-84. Instead, he ambiguously claims that he indirectly entered into implied contracts with one or more of the Distributor Defendants by pitching his COSMIC FORCE script to Davis Entertainment Company ("DEC") and Fox 21 Television Studios ("Fox 21") –

---

[1] Count Four of the FAC alleges Plaintiff's Breach of Contract – Implied Contract claim. *See* Dkt. No. 126, ¶¶ 78-84.  But this claim is not alleged against defendants Gray, Gross or RTF.  *Id.*  In fact, they were dismissed from earlier iterations of this claim.  *See* Dkt. No. 102 (dismissing breach of implied contract claim in Third Amended Complaint as to Gray, Gross and RTF without leave to amend); *see also* Dkt. No. 124 (ordering Plaintiff to "revise the [his initial draft of the FAC] to clarify that Count 4 is not asserted against Defendants RT Features U.S., LLC, Gray, and Gross").

third parties not named as defendants herein.  But these purported implied contracts are not enforceable against the Distributor Defendants because the undisputed evidence establishes that neither DEC nor Fox 21 was an agent or representative of any of the Distributor Defendants as to Plaintiff's alleged submissions of COSMIC FORCE.

### 1.   The Purported Contract with Davis Entertainment

On or about February 24, 2016, Plaintiff submitted several different scripts to John Davis ("Davis") and Mike Stein ("Stein") of DEC, an independent production company that had an office on the TCFFC studio lot.[2]  One of those submissions was a draft of Plaintiff's COSMIC FORCE script.[3]  By or about February 27, 2016, Stein, who was a television development executive at DEC, read COSMIC FORCE and gave the script a "C-minus" rating based on poor writing and weak characters and dialog.[4] Stein recommended that DEC "pass" on COSMIC FORCE, so Davis did not even read it.[5]  Stein, Davis, and DEC never shared COSMIC FORCE with the creators of AD ASTRA or anyone else.[6]  Moreover, Stein, Davis, and DEC had no connections with Gray, Gross or RTF, and had no involvement in creating AD ASTRA.[7]

Plaintiff has not named DEC as a defendant in this action.  Instead, Plaintiff contends that DEC was an authorized agent or representative of TCFFC or one of the other Distributor Defendants because it had an office on the studio lot of TCFFC in 2016 and its employees used email addresses indicating that their emails were stored on "fox" servers – *e.g.*, mike.stein@fox.com.  However, DEC was an independent film production company that was not a division or subsidiary of TCFFC or any of the other

---

[2] Dkt. No. 126, ¶¶ 32-34; Declaration of Mike Stein ("Stein Dec."), ¶¶ 2-5; Declaration of John Davis ("Davis Dec."), ¶¶ 1-7.

[3] Stein Dec., ¶ 5; Dkt. No. 126-12.

[4] Stein Dec., ¶ 6; Ex. 16.

[5] Stein Dec., ¶ 7; Davis Dec., ¶ 7.

[6] Stein Dec., ¶ 8. Davis Dec., ¶ 8.

[7] Stein Dec., ¶ 8; Davis Dec., ¶ 8.

Distributor Defendants but instead merely had a "housekeeping deal" with TCFFC.[8]
At no time in its limited dealings with Plaintiff concerning COSMIC FORCE was DEC
acting, authorized to act, or purporting to act for TCFFC or any of the Distributor
Defendants.[9]   In fact, despite its housekeeping deal with TCFFC, DEC did not even
have an exclusive relationship with TCFFC but instead often produced projects for
distribution by other studios.[10]

## 2.   The Purported Contract with Fox 21

Plaintiff also contends that in April 2016 he submitted COSMIC FORCE to
Gloria Fan ("Fan"), a former TV production executive at Fox 21, a distant sister
business of TCFFC that was only involved in television production, not motion
pictures.[11]   On April 7, 2016, Plaintiff made an unsolicited submission to Fan via email
attaching several TV show scripts including a made-for-television version of COSMIC
FORCE comprised of two episodes.[12]   Fan was not interested in COSMIC FORCE and
never shared it with the creators of AD ASTRA or anyone else.[13]   Additionally, neither

---

[8] Davis Dec., ¶¶ 3-4; The phrase "Housekeeping Deal" is defined as "[a]n arrangement in which a studio 'houses' producers and other creative people … giving them office space and paying their overhead.  In return, the studio receives first crack at the projects that are found and/or developed by these people."  Lydia & Joan Wilen, HOW TO SELL YOUR SCREENPLAY: A REALISTIC GUIDE TO GETTING A TELEVISION OR FILM DEAL, p. 18 (Square One 2001).

[9] Davis Dec., ¶¶ 4 and 6.

[10] Davis Dec., ¶¶ 3-4.

[11] Ex. 20 (Plaintiff's Response to Interrogatory No. 10) at 18:15-19:12; Declaration of Gloria Fan ("Fan Dec."), ¶ 2; Declaration of Scott Aversano ("Aversano Dec."), ¶¶ 10-11. Notably, the FAC does not allege this submission to Fan, and Plaintiff does not claim to have had an implied contract with Fox 21.  However, because Plaintiff identified this submission in response to written discovery and because Fox 21 has an indirect common parent company with TCFFC, the Distributer Defendants address Plaintiff's submission to Fan herein even though such unpled theories are not properly raised in opposition to a motion for summary judgment. *See e.g., City of Los Angeles v. Bank of Am. Corp.*, No. CV 13-9046 PA (AGRX), 2015 WL 4880511, at *5 (C.D. Cal. May 11, 2015), *aff'd*, 691 F. App'x 464 (9th Cir. 2017) (improper to assert theories not alleged in the complaint for the first time in opposition to a summary judgment); *Trishan Air, Inc. v. Fed. Ins. Co*., 635 F.3d 422, 435 fn.19 (9th Cir. 2011) (party may not defeat summary judgment by raising issues that were not pled in complaint). *Wasco Prod., Inc. v. Southwall Techs., Inc*., 435 F.3d 989, 992 (9th Cir. 2006) (same).

[12] Fan Dec., ¶ 5.

[13] Fan Dec., ¶¶ 6-9; *see also* Exs. 17-18.

Fan nor Fox 21 had any involvement in the creation or development of AD ASTRA.[14]

Plaintiff has not named Fox 21 as a defendant.  Instead, Plaintiff seems to assume that Fox 21 was an authorized agent or representative of TCFFC or one of the other Distributor Defendants because it was an indirect corporate affiliate of TCFFC in 2016.  But the reality is that in 2016, Fox 21 was an indirect television business of non-party Twenty-First Century Fox, Inc. ("21st Century Fox"), which was acquired by TWDC on or around March 20, 2019.[15]   Fox 21 and TCFFC, therefore, were distant sister businesses of 21st Century Fox through divergent corporate chains.[16]  Fox 21 was not an authorized agent or representative of TCFFC entitled to enter into contracts on its behalf and Fox 21 was never involved in AD ASTRA.[17]   At no time in Fan's extremely limited dealings with Plaintiff concerning COSMIC FORCE was Fan acting, authorized to act, or purporting to act for TCFFC or any of the Distributor Defendants.[18]

**B.    <u>The Distributor Defendants' Limited Creative Involvement in the Development of AD ASTRA</u>**

The independent and largely prior creation of AD ASTRA by Gray, Gross and RTF is detailed in the Writer Defendants' Motion (in which the Distributor Defendants have joined) and need not be repeated here.  *See* Dkt. No. 150, Section II.A.1.

Moreover, none of the Distributor Defendants had **any** involvement in the development of AD ASTRA until late in the history of the project.  It was not until during or about November 2016 that non-party New Regency Productions, Inc. ("New Regency") became involved in AD ASTRA as a producer and financer.[19]   Thereafter, in late February 2017, because New Regency had a preexisting film distribution deal with TCFFC, New Regency provided to TCFFC the AD ASTRA script by Gray and

---

[14] Fan Dec., ¶¶ 9-10.

[15] Fan Dec., ¶ 2; Aversano Dec., ¶¶ 10-11.

[16] Aversano Dec., ¶ 11.

[17] Aversano Dec., ¶¶ 2, 4, and 10-11.

[18] Fan Dec., ¶ 10; Aversano Dec. ¶ 5

[19] Declaration of Yariv Milchan ("Milchan Dec."), ¶ 3.

Gross dated February 22, 2017 ("the 2/22/17 Script") as TCFFC would be distributing the Film.[20]  This version of the AD ASTRA screenplay already contained all of the key ideas that Plaintiff contends were used in violation of his purported implied contracts with DEC and Fox 21.  It tells the story of astronaut Major Roy McBride as he journeys to the moon, Mars, and then Neptune in search of the source of mysterious power surges that threaten life on Earth – a trajectory leading him to his lost father, H. Clifford McBride, a research astronaut who was believed to be dead for the last 16 years after his spacecraft, the Lima Project, disappeared near Neptune.  Ex. 7.

Until TCFFC's receipt of the 2/22/17 Script in late February 2017, neither TCFFC nor any of the other Distributor Defendants "used" or had any opportunity to "use" Plaintiff's purported ideas to create AD ASTRA – because until that time none of them were involved in the AD ASTRA project.[21]  Instead, as is described in detail in the Writer Defendants' Motion, the initial creation and development of AD ASTRA was entirely the work of Gray, Gross and RTF.  *See* Writer Defendants' Motion (Dkt. No. 150), Section II.A.1.  Moreover, even after TCFFC was given the AD ASTRA script by New Regency in February 2017, its creative contributions to the Film were miniscule.[22]  Specifically, in response to a revised version of the AD ASTRA screenplay written by Gray and Gross dated July 23, 2017 ("the 7/23/17 Script") – which was very similar to the AD ASTRA film as it ultimately was released to the public – production executive Scott Aversano ("Aversano") of TCFFC only submitted to the producers of a

---

[20]  Milchan Dec., ¶ 4; Aversano Dec., ¶ 4. Importantly, as TCFFC had the film distribution output deal with New Regency under which it became the distributor of AD ASTRA.  Thus, this Motion by the Distributor Defendants largely focuses on TCFFC and not TWDC or 20th Century.  TWDC seems to have been added as a defendant herein merely because it acquired TCFFC in a corporate transaction that did not close until March 20, 2019 – by which time AD ASTRA had been filmed, had been exhibited in test screenings, and was almost ready for distribution except for the addition of voiceover dialogue and a few small scenes that were added in reshoots. Aversano Dec., ¶¶ 11-12.  As a result, TWDC had no creative involvement in AD ASTRA.  *Id*. at ¶ 12.  Additionally, defendant 20th Century was a corporate entity formed after the acquisition of TCFFC by TWDC that also had no involvement in creating AD ASTRA.  *Id*.

[21]  Aversano Dec., ¶¶ 3-6.

[22]  Aversano Dec., ¶ 6

1  handful of comments in a single email on August 4, 2017 as follows:

2  Fox Notes 08/04/17

3  Know you guys are moments away from production, so here are a few targeted questions and scene suggestions we
   hope will help with the fine-tuning you guys are already doing.  If you want to hash out any of these notes, let us know
4  and we'll dive in.

5  •    Instead of Spacecom betting the future of the solar system on a relationship that they already know doesn't exist,
   consider reworking the message Pruitt shares with Roy from his father (p.22-23) such that it justifies Spacecom's plan to
6  use Roy as a conduit to his father.  That is, have a Clifford video log that does not expressly reject Roy.  A more
   ambiguous Clifford statement might also provide an opportunity for Roy to discover his father's misanthropy as a
7  dramatic turn in their eventual confrontation, rather than having it already be known.

8  •    In lieu of the automated therapist/confessional scenes (p.32, p.58-9, p.74-75, p.90-1), it could be valuable to the
   romance to substitute those scenes for ones in which Roy responds to missives from Maria.  With those three or four
9  extra moments, we could dramatize an even more detailed story of their relationship -- referencing specific events,
   choices, an emotional back-and-forth – that would lend their eventual reunion more weight.
10
   •    The explanation of how the Lima causes the solar flares that threaten to destroy the solar system is confusing. Do
11 we lose anything by making the anti-matter, not the chain of events it causes, itself the problem?

12 •    A logic question – why doesn't Cepheus go directly to Neptune from the start, if it can go there eventually from
   Mars? We might consider moving both the ship capable of getting him to Neptune as well as the broadcast tower from
13 which he needs to send his signal to Mars from the start. That is, if the moon is merely a staging area, Roy couldn't end
   his commitment to the journey there, even were he not beset by pirates.  Stating from the start that Roy needs to get to
14 Mars might also make the progress of the storytelling less episodic in that stretch of the script.

15 •    Piracy could be a more effectively integrated story element if Spacecom uses their attacks as a cover story for the
   recent spate of disasters (antenna surge, Vesta IX distress signal, Martian crash).  Roy can then be read in to how
16 Spacecom is scape-goating the real, but less apocalyptic pirates in order to hide the truly terrifying devastation the Lima
   could cause from the general population.
17
   •    Can we clarify the state of affairs on Mars?  In particular, what's the difference between Helen Lantos and Chip
18 Garnes/Janice oversight of Roy's mission? Are they working for separate divisions of Spacecom? Who's really in charge
   and how does this impact Roy's story?
19
   •    Roy's eventual arrival at Lima station could be more climactic if Roy doesn't already know how his father feels
20 about him. Additionally, while this might require more retooling than is reasonable, is it worth the effort to preserve
   some Lima members fighting to return to Earth on the ship to embody the mutiny we now only hear about?  Putting the
21 mutiny in the present tense might afford us an opportunity to see Roy make harder choices about how to handle the
   situation with his father.

22 Aversano Dec., ¶ 5 and Ex. 12.  Because Aversano's comments on behalf of TCFFC

23 were not seen as essential by Gray and principal photography of the film was

24 commencing only a few days later on August 10, 2017, these comments did not result

25 in any material changes to the Film.[23]

26

27

28 [23] Aversano Decl., ¶6; Declaration of James Gray ("Gray Dec."), ¶ 14.

Even more importantly, Aversano's comments on the 7/23/17 Script in no way mention or otherwise relate to COSMIC FORCE or any ideas contained therein. *See* Ex. 12. Thus, Aversano's notes further reflect the fact that TCFFC made no "use" of any ideas contained in COSMIC FORCE in connection with AD ASTRA.[24] In fact, Aversano neither saw nor had any opportunity to see Plaintiff's COSMIC FORCE script and never even heard of COSMIC FORCE until after this litigation was filed – many months after AD ASTRA was released to the general public on September 20, 2019.[25]

## III. OVERVIEW OF APPLICABLE LEGAL PRINCIPLES

### A. The Legal Standard for Summary Judgment Under Rule 56

In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the U.S. Supreme Court held that Fed. R. Civ. P. Rule 56 "mandates the entry of summary judgment . . . against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322 (emphasis added). In actions concerning the alleged breach of implied contracts for the use of motion picture ideas, summary judgment is often granted and affirmed where the plaintiff is unable to raise a genuine issue that defendants had contractual "privity" exists or that "use" of the plaintiff's materials occurred. *Benay v. Warner Bros. Entm't, Inc*., 607 F.3d 620, 624 (9th Cir. 2010) (discussing privity requirement for breach of implied contract claims), *overruled in part on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (*en banc*); *Ryder v. Lightstorm Entm't, Inc*., 246 Cal. App. 4th 1064, 1074 (2016) (MSJ affirmed based on lack of sufficient similarity); *Spinner v. Am. Broad. Cos., Inc*., 215 Cal. App. 4th 172, 184 (2013) (MSJ affirmed on independent creation grounds).

### B. Fundamentals of an Idea Submission Claim

Plaintiff's Fourth Count alleges a California law breach of implied contract claim against the Distributor Defendants based on allegations that AD ASTRA "used" ideas

---

[24] Aversano Decl., ¶6; Gray Dec., ¶¶ 14-15; Ex. 12.
[25] Aversano Dec., ¶¶ 2, 16; Gray Decl., ¶ 17.

from COSMIC FORCE in breach of purported implied contracts Plaintiff had supposedly entered into with TCFFC, TWDC and/or 20th Century.  *See* FAC, Count 4. To prevail on such claims, Plaintiff must prove that: "(1) [he] submitted the [COSMIC FORCE] [s]creenplay for sale **to Defendants**; (2) [he] conditioned the use of the [COSMIC FORCE] [s]creenplay on payment; (3) Defendants knew or should have known of the condition; (4) Defendants voluntarily accepted the [COSMIC FORCE] [s]creenplay; (5) Defendants **actually used** the [COSMIC FORCE] [s]creenplay; and (6) the [COSMIC FORCE] [s]creenplay had value." *Benay*, 607 F.3d at 629 (emphases added); *see also Mann v. Columbia Pictures, Inc*., 128 Cal. App. 3d 628, 647 fn. 6 (1982); *Faris*, 97 Cal. App. 3d 309, 318 (1979); *Klekas v. EMI Films, Inc*., 150 Cal. App. 3d 1102, 1114 (1984) (affirming summary judgment for defendants where "[a]lthough plaintiff may have submitted his literary effort to one of the named defendants, there is nothing in the record to establish the **use** of that work in the writing or making of [the motion picture] 'The Deer Hunter.'") (emphasis added).

Here, there is no evidence of direct dealings between Plaintiff and any of the Distributor Defendants resulting in an implied contract between them, so Plaintiff's idea submission claim against them fails at the contract formation stage. *Benay*, 607 F.3d at 634 ("[p]rivity between the parties is a necessary element of an implied-in-fact contract claim.").  Additionally, as Plaintiff must also prove the element of "use," his implied contract claim fails because he cannot raise a genuine issue that the Distributor Defendants had "access" to COSMIC FORCE in the creation of AD ASTRA. *Spinner*, 215 Cal. App. 4th at 185 (holding that access requires "a 'reasonable possibility' to view the plaintiffs' work, which must be based on more than mere speculation.") (citation omitted).  Additionally, lack of substantial similarity between the ideas embodied in the works at issue also precludes a finding of "use." *Ryder*, 246 Cal. App. 4th at 1074 (granting summary judgment).  Finally, undisputed evidence of independent creation negates a finding of use. *Hollywood Screentest of Am. Inc. v. NBC Universal*, 151 Cal. App. 4th 631, 648 (2007) (affirming summary judgment).

1    **IV.    SUMMARY JUDGMENT MUST BE ENTERED IN FAVOR OF THE**
2           **DISTRIBUTOR DEFENDANTS ON THE FOURTH COUNT**

3           **A.    Plaintiff Had No Implied Contract with Any Distributor Defendant**

4           Privity is a critical element of a breach of implied contract claim in an idea-
5    submission case.  "Generally speaking, ideas are as free as the air….  The general rule
6    of law is that the noblest of human productions – knowledge, truths ascertained,
7    conceptions and ideas – become, after voluntary communication to others, free as the
8    air to common use."  *Desny v. Wilder*, 46 Cal. 2d 715, 731-32 (1956); *Rokos v. Peck*,
9    182 Cal. App. 3d 604, 613 (1986).  Consequently, the law has developed so that ideas
10   can only be protected by a contract between a seller who offers to sell an otherwise
11   unprotectable idea, and a willing buyer who agrees to pay for use of the idea under
12   conditions that the buyer is specifically made aware of before the idea is disclosed.
13   *Desny*, 46 Cal. 2d at 737-739; *Faris v. Enberg*, 97 Cal. App. 3d 309, 318-20 (1979).

14          In this context, it is basic that "[p]rivity between the parties is a necessary element
15   of an implied-in-fact contract claim."  *Benay*, 607 F.3d at 634; *Design Data Corp. v.*
16   *Unigate Enter., Inc.*, No. C 12-4131 PJH, 2013 WL 360542, at *5 (N.D. Cal. Jan. 29,
17   2013) ("the courts have … held that privity between the parties is a necessary element
18   of an implied-in-fact contract claim").  This is because, absent privity with the plaintiff,
19   a defendant cannot have the required "opportunity to reject" the plaintiff's submission
20   of his idea.  *Desny*, 46 Cal. 2d at 739.  Thus, "the creation of an implied-in-fact contract
21   ... is of such a personal nature that it is effective only between the contracting parties."
22   *Rokos*, 182 Cal. App. 3d at 617-18 (holding that implied contracts for film and TV ideas
23   are so "purely personal [in] nature" that they are non-assignable).  Moreover, as a result
24   this privity requirement, "[a]ny person not a party to the contract is free to use the idea
25   without restriction."  *Chandler v. Roach,* 156 Cal. App. 2d 435, 441 (1957) (citation
26   omitted); *see also Mann,* 128 Cal. App. 3d at 647 fn. 6.

27          Here, there is no genuine issue as to privity between Plaintiff and any of the
28   Distributor Defendants because Plaintiff never submitted COSMIC FORCE to any of

them directly, and neither DEC nor Fox 21 was an authorized agent or representative of them in connection with either COSMIC FORCE or AD ASTRA.

### 1.  The Submission to DEC Created No Enforceable Contract

Plaintiff's pitch of COSMIC FORCE to DEC failed to create an implied contract with TCFFC or any of the other Distributor Defendants because of the absence of contractual privity – *i.e.*, the undisputed evidence shows that DEC was an independent company that was not an authorized agent or representative of TCFFC or any of the other Distributor Defendants.[26]   Additionally, Plaintiff cannot save his claim by asserting that DEC had "ostensible authority" to act on behalf of any Distributor Defendant.  In California, ostensible agency is defined by statute.  *See* Cal. Civ. Code §§ 2300, *et seq*.  "The party asserting the existence of authority must prove that (1) it relied on the agent with a reasonable belief in the agent's authority; (2) its belief was generated by the principal's act or omission; and (3) its reliance on the agent's apparent authority was not negligent."  *MV Transp., Inc. v. Omne Staff Leasing, Inc*., 378 F. Supp. 2d 1200, 1206 (E.D. Cal. 2005) (citing *Mejia v. Comm. Hosp. of San Bernardino*, 99 Cal. App. 4th 1448, 1457 (2002)).

In the present case, the required elements of ostensible authority cannot be satisfied by Plaintiff.  The evidence shows that DEC was an independent company that merely had a standard entertainment industry "housekeeping" deal with TCFFC (*see* fn. 8, *supra*) and never held itself out as an agent or representative of TCFFC or any of the other Distributor Defendants.[27]   In fact, DEC did not even have an exclusive relationship with TCFFC but had also worked with and released films through several other studios.[28]   Further, to establish ostensible agency, Plaintiff would have to show that TCFFC or one of the other Distributor Defendants acted so as to induce his belief that DEC was its agent in connection with COSMIC FORCE, but Plaintiff can point to

---

[26] Davis Dec., ¶ 4; Stein Dec., ¶ 2; Aversano Dec., ¶ 13.

[27] Davis Dec., ¶ 4; Stein Dec., ¶ 2.

[28] Davis Dec., ¶ 4.

no such conduct because it never occurred.  In short, there is no genuine issue for trial that Plaintiff entered into an implied contract with the Distributor Defendants as the result of his submission of COSMIC FORCE to DEC.

## 2.   The Submission to Fan Created No Enforceable Contract

As for Plaintiff's unalleged claim based on his unsolicited submission of COSMIC FORCE to Gloria Fan while she was working at Fox 21, it is not alleged in the FAC and therefore irrelevant.  *See* fn. 11, *supra*.  The submission to Fan also fails to create an implied contract with TCFFC or any of the other Distributor Defendants because of the lack contractual privity – *i.e*., the undisputed evidence shows that Fox 21 was merely an indirect affiliated business of TCFFC that under basic rules of corporate separateness was not an agent or representative of TCFFC or any of the other Distributor Defendants.[29]   The basic rule of corporate separateness is that "only a signatory to a contract may be liable for any breach."  *Clemens v. Amer. Warr. Corp*., 193 Cal. App. 3d 444, 452 (1987) (citing *Sessions v. Chrysler Corp.*, 517 F.2d 759, 760 (9th Cir. 1975)).  This rule of corporate separateness can only be disregarded as to corporate affiliates if the parent company exercises "sufficient control over the [subsidiary's] activities" such that the subsidiary becomes a "mere agen[t] or 'instrumentality' of the parent."  *Cohen v. TNP 2008 Participating Notes Program, LLC*, 31 Cal. App. 5th 840, 862 (2019) (citation omitted).

Here, the evidence is undisputed that neither TCFFC nor any of the other Distributor Defendants exercised any control over the activities of Fox 21 or its executive, Gloria Fan, in connection with COSMIC FORCE.[30]  Fan's work at Fox 21 was not conducted as a "mere agent" or "instrumentality" of TCFFC.  To the contrary, Fan's work at Fox 21 largely consisted of developing television programing that could be sold to other third-party broadcasting platforms – including TV series for the

---

[29] Aversano Dec., ¶¶ 10-11; Fan Dec., ¶ 10.

[30] Aversano Dec., ¶¶ 10-11; Fan Dec., ¶ 10.

National Geographic Channel, FX, NBC and Showtime.[31]   After Fan received Plaintiff's email forwarding to her several teleplays including a made-for-television version of COSMIC FORCE comprised of two episodes, she did not think it was appropriate for development by Fox 21 and never brought the proposed project to the attention of anyone else – neither other employees of Fox 21 nor anyone at TCFFC or any of the other Distributor Defendants.[32]   In short, there is no genuine issue for trial that Plaintiff entered into an implied contract with the Distributor Defendants as the result of his submission of COSMIC FORCE to Fox 21.

**B.** **Plaintiff Cannot Prove "Use" of COSMIC FORCE By Any of The Distributor Defendants in Connection with AD ASTRA**

**1.** **Plaintiff Cannot Raise a Genuine Issue as to Access**

Even if Plaintiff was able to raise a genuine issue as to contractual privity (but he cannot (*see* Section IV.A., *supra*)), he would also need to prove that "Defendants **actually used** the [COSMIC FORCE] [s]creenplay…."   *Benay*, 607 F.3d at 629 (emphasis added).   The element of "use" has two requirements: (a) access, and (b) substantial similarity.   *Spinner*, 215 Cal. App. 4th at 185 ("When the plaintiffs do not have direct evidence of use, they may raise an inference of use by showing the defendants had access to their ideas and the defendants' work is substantially similar to the plaintiffs' ideas").   Access – *i.e.*, a reasonable opportunity to copy the plaintiff's work – is essential and it requires more than "bare corporate receipt."   *Id.*, at 186 ("access requires a sufficiently strong nexus between the intermediary to whom the plaintiffs submitted their work and the creator of the allegedly offending work.") (quoting and relying on *Meta-Film Assocs., Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1354 (C.D. Cal. 1984)); *see also Ryder*, 246 Cal. App. 4th at 1073.

Here, Plaintiff cannot raise a genuine for trial on the issue of "use" against the Distributor Defendants because access cannot be based on "mere speculation" (*Spinner*,

---

[31] Fan Dec., ¶¶ 2-3.
[32] Fan Dec., ¶¶ 8-10.

215 Cal. App. 4th at 187), yet there exists no evidence that any of the Distributor Defendants had a reasonable opportunity to copy COSMIC FORCE in creating AD ASTRA.  As discussed in Section IV.A., above, Plaintiff never directly submitted COSMIC FORCE to TCFFC or any of the other Distributor Defendants.  Instead, the only submissions of Plaintiff's script were to Davis and Stein of DEC and to Fan of Fox 21.  But none of them were involved in the creation of AD ASTRA or provided the COSMIC FORCE script to TCFFC or any of the other Distributor Defendants.[33] Additionally, the evidence is undisputed that Aversano, who provided TCFFC's **only** pre-filming notes concerning the AD ASTRA screenplay only a few days before the start of principal photography (*see* Section II.B. at p. 7, *supra*) – never learned of COSMIC FORCE until after Plaintiff filed his lawsuit, many months after AD ASTRA was released.  Aversano Dec., ¶¶ 2, 5; and Ex. 12.

Moreover, the early independent creation of AD ASTRA by Gray, Gross and RTF, much of which was completed **before** COSMIC FORCE had even been written by Plaintiff, is extensively detailed in the Writer Defendants' Motion. *See* Dkt. No. 150. By the time that AD ASTRA reached TCFFC in the form of the 2/22/17 Script in late February 2017 and the subsequent 7/23/17 Script as to which TCFFC provided its first comments, the creative development of AD ASTRA already was virtually complete. So even if the Distributor Defendants had access to COSMIC FORCE (and they did not) when they became involved in AD ASTRA in 2017, it was too late to create genuine issues for trial. *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1054 (C.D. Cal. 2010) ("to logically support a claim that Defendants copied Plaintiff's work, Defendants must have had access to Plaintiff's … work **before** the creation of the allegedly infringing work.") (emphasis in original).

In light of the above evidence establishing that the Distributor Defendants had no reasonable opportunity to copy COSMIC FORCE in the creation of AD ASTRA,

---

[33] Stein Dec., ¶ 8; Davis Dec., ¶ 8; Fan Dec., ¶ 9; Aversano Dec., ¶¶ 11, 13.

Plaintiff cannot raise a genuine issue for trial that COSMIC FORCE was "used" by TCFFC or any of the Distributor Defendants in connection with the creation of AD ASTRA.  Thus, summary judgment should be granted for the Distributor Defendants.

### 2.    There Exists No Genuine Issue as to Substantial Similarity

To raise a genuine issue as to the second element of "use," Plaintiff must also prove that the ideas incorporated in AD ASTRA are "substantially similar" to the ideas in COSMIC FORCE.[34]   *Ryder*, 246 Cal. App. 4th at 1073 ("[f]or implied contract … claims, the works must be **substantially** similar") (emphasis in original); *A Slice of Pie Prods., LLC v. Wayans Bros. Entm't*, 487 F. Supp. 2d 41, 52 (D. Conn. 2007) (applying California law); *see also Klekas*, 150 Cal. App. 3d at 1114 (holding "there is nothing in the record to establish the use of [plaintiff's] work" in a case where "the screenplay of 'The Deer Hunter,' is, as a matter of law, substantially **dissimilar** to plaintiff's novel.") (emphasis added); *Henried v. Four Star Television*, 266 Cal. App. 2d 435, 437 (1968); *Sutton v. Walt Disney Productions*, 118 Cal. App. 2d 598, 603 (1953); *see also Bergman v. Electrolux Corp.*, 558 F. Supp. 1351, 1353 (D. Nev. 1983) (applying California law).

Importantly, in evaluating whether substantial similarity exists between the works at issue, the court must first "filter out" preexisting elements in the defendant's work that pre-date the time when the defendant allegedly had access to the plaintiff's work.  *Ryder*, 246 Cal. App. 4th 1064, 1074 (2016) (citing and relying on *Murray Hill Pubs., Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 326 (6th Cir. 2004)); *Benjamin v. Walt Disney Co*., No. CV 05-2280GPS, 2007 WL 1655783 *4 (C.D. Cal. June 5, 2007) (granting MSJ after ruling "the Court must filter out all material created [by defendants] prior to the beginning of the *Sweet Home* project at Disney.").  Accordingly, in determining substantial similarity for purposes Plaintiff's Fourth Count

---

[34] This is a slightly different analysis than the evaluation of the works that is required for Plaintiff's copyright infringement claims, which is based on substantial similarity in copyright-protected **expression** rather than **ideas**.  *See Benay*, 607 F.3d at 631 ("because the claim is based in contract, unauthorized use can be shown by substantially similar elements that are not protected under copyright law.").

against the Distributor Defendants, the Court must "filter out" all of the AD ASTRA materials that Gray, Gross and RTF created before Plaintiff pitched COSMIC FORCE to Davis and Stein of DEC in February 2016, and to Fan of Fox 21 in April 2016.

Thus, much as in determining substantial similarity of copyright-protected expression for purposes of Plaintiff's copyright infringement claim (*see* Dkt. No. 150, Section IV.D.), in ascertaining substantial similarity of ideas under Plaintiff's implied contract claim, the Court must first "filter out" the November 29, 2013 screenplay, the August 27, 2014 outline, and the May 22, 2015 screenplay written by Gray and Gross for AD ASTRA before there was any possibility of access to COSMIC FORCE.[35]  But once those earlier AD ASTRA works are filtered out of the substantial similarity analysis, no genuine issue remains for trial on this element.  The Writer Defendants' prior AD ASTRA works told the story of an astronaut who embarks on a dangerous journey to Neptune featuring spaceships, futuristic weapons, and battles in space, to confront and kill his own father, who had led an earlier unsuccessful space mission in which he was presumed to have perished.  But after those purported similarities of ideas are filtered out of the analysis, no remaining ideas contained in AD ASTRA are "substantially similar" to COSMIC FORCE at all.  Gale Dec., ¶¶ 160-162.

Accordingly, the Fourth Count should be dismissed as to the Distributor Defendants.  *See Ryder*, 246 Cal. App. 4th at 1076-78 (affirming summary judgment after "filtering out" defendants' prior works); *A Slice of Pie*, 487 F. Supp. 2d at 52 (holding lack of substantial similarity needed to support a copyright infringement claim also established that "plaintiff has insufficient evidence of use by defendants of plaintiff's screenplay and/or the ideas therein" to support its implied contract claim).

---

[35] Gray Dec., ¶¶ 4-10; Declaration of Ethan Gross ("Gross Dec."), ¶¶ 4-9; Declaration of Bob Gale ("Gale Dec."), ¶¶ 39-44 and 160-162; Exs. 1-2, 5; *see also* Writer Defendants' Motion (Dkt. No. 150), Section IV.D.

### 3.      Independent Creation Negates Any Inference of "Use"

In addition, uncontroverted evidence of independent creation negates, as a matter of law, any inference of "use" even when genuine issues exist as to access and substantial similarity. *Hollywood Screentest*, 151 Cal. App. 4th at 649 (affirming summary judgment where "[defendant] has presented undisputed evidence of independent creation, thus preventing a finding of use…."); *Spinner*, 215 Cal. App. 4th at 185 (affirming summary judgment as "[e]ven when the plaintiffs raise an inference of use ... the defendants may dispel that inference with evidence that conclusively demonstrates the defendants independently created their product."). Thus, "similarity is no longer a material issue when the defendants show conclusively that they independently created their product." *Spinner*, 215 Cal. App. 4th at 185; *see Gunther-Wahl Prod's, Inc. v. Mattel, Inc.*, 104 Cal. App. 4th 27, 33 (2002); *Mann*, 128 Cal. App. 3d at 648-51; *Teich v. General Mills, Inc.*, 170 Cal. App. 2d 791, 799-800 (1959).

Moreover, otherwise uncontroverted evidence of independent creation – as exists in this case – cannot be rebutted so as to create a genuine issue for trial by "'"'"suspicion alone, or ... imagination, speculation, supposition, surmise, conjecture, or guesswork."….'"' *Hollywood Screentest*, 151 Cal. App. 4th at 648 (quoting *Mann*, 128 Cal. App. 3d at 650-51); *see also Spinner*, 215 Cal. App. 4th at 193 (affirming summary judgment for defendants on claim arising from the TV series LOST because "[s]peculation that Braun, Kadin, or Sherman had access to the 1977 Script [written by the plaintiff], and then more speculation that they transmitted [plaintiff's] ideas to Lieber, Lindelof, or Abrams, is insufficient to create an issue of fact.").

Here, the Distributor Defendants' evidence of independent creation is uncontradicted. Plaintiff never directly submitted COSMIC FORCE to TCFFC or any of the other Distributor Defendants. Instead, the only claimed submissions of Plaintiff's script were to Davis and Stein of DEC and to Fan of Fox 21. But none of them were involved in the creation of AD ASTRA or provided the COSMIC FORCE script to

TCFFC or any of the other Distributor Defendants.[36]   Further, the evidence is undisputed that Aversano, the key TCFFC executive working on AD ASTRA – who provided TCFFC's only pre-filming notes concerning the AD ASTRA script shortly before the start of principal photography (see Section II.B. at p. 7) – never heard or knew of COSMIC FORCE until after Plaintiff filed his lawsuit, after AD ASTRA was released.  Aversano Dec., ¶ 2 and Ex. 12.

Moreover, the early independent creation of AD ASTRA by Gray, Gross and RTF, much of which was completed before COSMIC FORCE had even been written by Plaintiff, is extensively detailed in the Writer Defendants' Motion.  By the time that AD ASTRA reached TCFFC in the form of the 3/24/17 Script in late March 2017 and the subsequent 7/23/17 Script as to which Aversano provided TCFFC's first comments, the creative development of AD ASTRA was virtually complete.  The Distributor Defendants have thus established that insofar as they were involved in AD ASTRA, their work on the Film was entirely independent of COSMIC FORCE.

Because Plaintiff's rebuttal to this clear evidence of independent creation consists solely of improper speculation, conjecture and surmise, summary judgment should be granted on these grounds too for the Distributor Defendants.

**C.**   **Plaintiff's Breach of Implied Contract Claim Against TCFFC and TWDC is Time Barred**

Finally, Plaintiff's breach of implied contract claims against TCFFC and TWDC are time-barred under California's two-year statute of limitations. The statute of limitations for breach of implied contract claims under California law is two years.  Cal. Civ. Proc. Code § 339.  An implied contract claim accrues on the date of the alleged breach, which – in the context of implied contracts for the use of motion picture and literary ideas – is the date that the defendant's work was released to the general public. *See*, *e.g.*, *Benay*, 607 F.3d at 633 (9th Cir. 2010); *Hoff v. Walt Disney Pictures*, No.

---

[36] Stein Dec., ¶ 8; Davis Dec., ¶ 8; Fan Dec., ¶ 9; Aversano Dec., ¶¶ 11, 13.

EDCV1900665AGKKX, 2019 WL 6329368, at *5 (C.D. Cal. Aug. 19, 2019).  Here, AD ASTRA was theatrically released on September 20, 2019.  Gray Dec., ¶ 17.  Thus, the limitations period for Plaintiff to allege his breach of implied contract claim against TCFFC and TWDC ended on September 20, 2021.  But Plaintiff waited until January 2, 2023 – more than three years and three months after the release of AD ASTRA and 469 days after the statute of limitations expired – before adding TCFFC and TWDC as new defendants in his belatedly-filed FAC.  Thus, the Fourth Count is time-barred as to Plaintiff's breach of implied contract claims against TCFFC and TWDC.[37]

## V.   CONCLUSION

For the reasons stated above, this Motion should be granted, and the Fourth Amended Complaint should be dismissed in full with prejudice as to all of the Distributor Defendants – TCFFC, TWDC and 20th Century.

Dated:  June 1, 2023

RESPECTFULLY SUBMITTED,

FOX ROTHSCHILD LLP

*/S/ DAVID ARONOFF*

David Aronoff
Joshua Bornstein
Attorneys for Defendants
TWENTIETH CENTURY FOX FILM
CORPORATION, THE WALT DISNEY
COMPANY, 20TH CENTURY
STUDIOS, INC., RT FEATURES U.S.,
LLC, JAMES GRAY, and ETHAN
GROSS

---

[37] Moreover, Plaintiff cannot rely on relation back principles to excuse his late joinder of TCFFC and TWDC in the Fourth Count since he intentionally decided to not name them as defendants within the limitations period.  Specifically, Plaintiff's initial Complaint filed July 21, 2021 expressly alleged that TCFFC was a predecessor of defendant 20th Century, which was "a film studio that is a subsidiary of Walt Disney Studios Co." (Dkt. 1, ¶ 2), yet neither TCFFC nor TWDC were named as defendants. *See Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 857-58 (9th Cir. 1986) ("Rule 15(c) was never intended to assist a plaintiff who ignores or fails to respond in a reasonable fashion to notice of a potential party, nor was it intended to permit a plaintiff to engage in piecemeal litigation."); *Brink v. First Credit Res.*, 57 F. Supp. 2d 848, 856 (D. Ariz. 1999) ("Rule 15(c) gives no relief to a plaintiff who engaged in a tactical decision.").